# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

### *Bjork v. O'Meara*, 2013 IL 114044

---

| | |
|---|---|
| Caption in Supreme Court: | COLLEEN BJORK, Appellant, v. FRANK P. O'MEARA, Appellee. |
| Docket No. | 114044 |
| Filed | January 25, 2013 |
| Rehearing denied | March 25, 2013 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | A tort claim that defendant independent representative of an estate had intentionally interfered with the testamentary expectancy of plaintiff, who had once been a pay-on-death beneficiary of one of decedent's bank accounts, did not challenge the will and should not have been dismissed as not filed within the time period for will contests. |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Michael R. Panter, Judge, presiding. |
| Judgment | Appellate court judgment reversed.<br>Circuit court order reversed.<br>Cause remanded. |

Counsel on
Appeal

Kurt J. LeVitus, of Chicago, for appellant.

David P. Schippers and Kris Daniel, both of Chicago, for appellee.

Justices

JUSTICE FREEMAN delivered the judgment of the court, with opinion.

Chief Justice Kilbride and Justices Thomas, Garman, Karmeier, Burke, and Theis concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff, Colleen Bjork, brought an action in the circuit court of Cook County against defendant, Frank P. O'Meara, alleging intentional interference with a testamentary expectancy. The circuit court dismissed plaintiff's complaint as time-barred under the limitation period governing will contests. The appellate court affirmed the dismissal. 2012 IL App (1st) 111617. This court allowed plaintiff's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010). We now reverse the judgment of the appellate court and the order of the circuit court, and remand the cause to the circuit court for further proceedings.

¶ 2                          I. BACKGROUND

¶ 3     For several years prior to his death, Frank J. Dama was a friend to Bjork and to O'Meara. He was not related to either by blood or marriage. Bjork worked as a hospice nurse for Dama's late wife. O'Meara was Dama's dentist.

¶ 4     In a May 2005 telephone conversation with Bjork, Dama, who was 90 years old, told Bjork that he owned two bank accounts. One was his regular checking account containing approximately $800,000. Dama told Bjork that O'Meara knew the existence of this account, and that O'Meara "had been asking Dama for more and more money." The other account, containing approximately "half a million," was not used to pay expenses, and O'Meara did not know this account existed. Dama told Bjork that he wanted her to have this account "because he did not want O'Meara to get everything." Dama told Bjork that he wanted to name her as the pay-on-death beneficiary on this account.

¶ 5     Over the course of several months, Dama's personal banker, Mary Williams of the Northern Trust Company (hereafter Northern Trust), twice telephoned Bjork to inform her that Dama wanted to name Bjork as pay-on-death beneficiary on one of his bank accounts. In these conversations, Williams obtained information from Bjork, and asked her if she would sign documents to complete the beneficiary designation process. Bjork agreed.

¶ 6     On October 4, 2005, Williams sent a package to Bjork via FedEx, which contained documents for Bjork to sign to complete the beneficiary designation process. One of the documents was Northern Trust's form entitled "Power of Attorney," which already had been

signed by Dama and had been partially completed. The information on the form included the account number (612375), the social security numbers of Dama and Bjork, and the title of "Frank J. Dama Trustee for Colleen Mary Bjork Beneficiary." Bjork signed this form and returned it to Williams. Thereafter, two deposits were made into Dama's Northern Trust bank account number 612375, bringing the balance of that account to $566,695.52.

¶ 7      On October 21, 2005, Dama signed a power of attorney for property that appointed O'Meara as his agent, and expressly revoked all powers previously granted to Bjork. On December 13, 2005, Dama executed a will containing a general residuary clause, in which he left his entire estate to O'Meara and O'Meara's wife.

¶ 8      From late 2005 through the end of 2008, Bjork and Dama were in contact through letters, telephone conversations, and in-person visits. In mid-January 2009, Dama telephoned Bjork to inform her that he had fallen and was not feeling well. Bjork visited Dama in his apartment, where O'Meara's secretary was present. Thereafter, Bjork's telephone calls to Dama's apartment went unreturned.

¶ 9      Dama died on February 18, 2009. Shortly after Dama's death, a representative of Northern Trust informed Bjork that she was not a beneficiary of any Dama account.

¶ 10                              A. Probate Proceeding

¶ 11      O'Meara filed the will with the clerk of the circuit court, and thereafter filed a petition for probate of will and for letters testamentary. Counsel for Bjork subsequently filed an appearance on her behalf. The court admitted the will to probate and appointed O'Meara as the independent representative of Dama's estate.

¶ 12      Bjork filed two citation petitions pursuant to section 16-2 of the Probate Act of 1975 (755 ILCS 5/16-2 (West 2008)). Bjork filed a petition for a citation to Northern Trust for the recovery of property. Bjork asserted that she was the rightful owner of the assets in the Northern Trust account, but that O'Meara considered those funds as belonging to the estate.

¶ 13      Bjork also filed an amended petition for a citation to Northern Trust for discovery of information. Bjork alleged that when she asked for additional information, a Northern Trust representative stated that no further information would be provided except by court order. The circuit court issued a citation to Northern Trust for discovery. In response, Northern Trust produced documents. Bjork thereafter petitioned for leave to depose Williams in furtherance of the citation to discover information. Bjork asserted that Williams had information that was crucial to Bjork's claim, which was not contained in the documents produced thus far. Bjork alleged that a deposition of Williams would be the most efficient and least burdensome means to learn the truth about Dama's intent regarding the Northern Trust account.

¶ 14      On October 27, 2009, the circuit court denied Bjork's petition to depose Williams. Bjork filed a combined motion to reconsider and motion to clarify the denial of Bjork's petition to depose Williams. On November 30, 2009, the circuit court denied Bjork's motion to reconsider, and the court explained that it lacked the authority to order the deposition of Williams.

¶ 15    On April 2, 2010, O'Meara presented his "Final Report of Independent Representative," in which he stated that the "assets of the estate have been distributed to the persons entitled thereto." The circuit court entered an order discharging O'Meara and closing the estate.

¶ 16                                    B. Instant Complaint

¶ 17    In October 2010, Bjork filed a complaint for intentional interference with a testamentary expectancy. In addition to alleging the above-recited background, Bjork alleged as follows: Dama had planned to name her as the pay-on-death beneficiary of Northern Trust account number 612375, and had taken affirmative steps toward fulfilling his intention; O'Meara intentionally deprecated Bjork's relationship with Dama and interfered with Dama's plan by fraud, undue influence, misrepresentation, or other tortious means; O'Meara benefitted from his tortious conduct where the proceeds of the account were distributed to him and his wife pursuant to Dama's will; and, if not for O'Meara's wrongdoing, Bjork would have been named the beneficiary of the account and would have received the account proceeds on Dama's death. As damages, plaintiff requested $566,695.52, which was the amount of money deposited in the account, plus interest, attorney fees, and expenses.

¶ 18    O'Meara filed a combined motion to dismiss pursuant to section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2008)) alleging defects under both section 2-619(a)(5) and section 2-615 (735 ILCS 5/2-615, 2-619(a)(5) (West 2008)). The section 2-619 portion of the motion alleged that Bjork's action was time-barred because she did not bring it within the six-month limitation period governing will contests. See 755 ILCS 5/8-1 (West 2008). Alternatively, the section 2-615 portion of the motion alleged that Bjork's complaint failed to state a cause of action.

¶ 19    The circuit court granted O'Meara's motion to dismiss in a memorandum order. The court concluded that Bjork's action was time-barred based on the six-month limitation period of section 8-1 of the Probate Act. The appellate court affirmed. 2012 IL App (1st) 111617. Bjork appeals to this court.

¶ 20                                    II. ANALYSIS

¶ 21    O'Meara moved to dismiss Bjork's complaint pursuant to section 2-619.1 of the Code of Civil Procedure, which allows a party to file a motion combining a section 2-615 motion to dismiss with a section 2-619 motion to dismiss. 735 ILCS 5/2-619.1 (West 2008). A section 2-615 motion to dismiss tests the legal sufficiency of a complaint. A section 2-619 motion to dismiss admits the sufficiency of the complaint, but asserts affirmative matter that defeats the claim. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31; *King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1, 11-12 (2005). Among such affirmative matter is that "the action was not commenced within the time limited by law." 735 ILCS 5/2-619(a)(5) (West 2008). The circuit court granted O'Meara's motion to dismiss on this basis. A section 2-619 motion admits as true all well-pleaded facts, as well as all reasonable inferences that may arise therefrom. Further, when ruling on a section 2-619 motion, a court must interpret all pleadings and supporting documents in favor of the nonmoving party. *Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 352 (2008). Our

review of a dismissal under either section 2-615 or section 2-619 is *de novo*. *Patrick Engineering*, 2012 IL 113148, ¶ 31; *King*, 215 Ill. 2d at 12.

¶ 22 The sole issue presented in the case at bar is the timeliness of Bjork's tort claim. The circuit and appellate courts applied the six-month limitation period governing will contests (see 755 ILCS 5/8-1 (West 2008)), rendering her complaint time-barred.

¶ 23 After the admission of a will to probate, section 8-1 of the Probate Act establishes a six-month limitation period to "file a petition *** to contest the validity of the will." 755 ILCS 5/8-1 (West 2008). The single issue in a will contest is whether the document produced is the will of the testator. The object of a will contest proceeding is not to secure a personal judgment against an individual defendant. Rather, a will contest is a *quasi in rem* proceeding against the will itself and seeks to set the will aside. *In re Estate of Ellis*, 236 Ill. 2d 45, 51 (2009) (and cases cited therein). This six-month limitation period is not subject to tolling by fraudulent concealment or any other fact not expressly provided for by the Probate Act. If a challenger to a will fails to initiate a will contest proceeding within the six-month statutory time period, the validity of the will is established for all purposes. *Id.* at 50; *Robinson v. First State Bank of Monticello*, 97 Ill. 2d 174, 182-83 (1983).

¶ 24 A will contest is quite distinct from a tort action for intentional interference with a testamentary expectancy. One who by fraud, duress, or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that she would otherwise have received is subject to liability to the other for loss of the inheritance or gift. *Ellis*, 236 Ill. 2d at 52; see *Nemeth v. Banhalmi*, 99 Ill. App. 3d 493, 497-99 (1981); Restatement (Second) of Torts § 774B (1979). This widely recognized cause of action does not contest the validity of the will. Rather, the tort is a personal action directed at an individual tortfeasor. A plaintiff must establish the following elements: (1) the existence of an expectancy; (2) defendant's intentional interference with the expectancy; (3) conduct that is tortious in itself, such as fraud, duress, or undue influence; (4) a reasonable certainty that the expectancy would have been realized but for the interference; and (5) damages. *Ellis*, 236 Ill. 2d at 52. The remedy for an intentional interference with a testamentary expectancy is not the setting aside of the will, but a judgment against the individual defendant. Further, where the defendant has received the benefit of the bequest or legacy, the plaintiff's remedies include a simple money judgment to the extent of the benefit tortiously acquired. *Id.* In the instant case, it is undisputed that Bjork filed her complaint within the five-year general statute of limitations for actions to recover the possession of personal property or damages for its detention or conversion. See 735 ILCS 5/13-205 (West 2008).

¶ 25 The six-month limitation period for will contests established in section 8-1 of the Probate Act does not expressly limit a tort action for intentional interference with a testamentary expectancy. Under certain circumstances, however, Illinois courts have prohibited the tort where a plaintiff forgoes an opportunity to file a tort claim within the six-month limitation period for a will contest. For example, in *Robinson v. First State Bank of Monticello*, this court viewed the plaintiffs' tort allegations as challenging the validity of the decedent's will and codicil. *Robinson*, 97 Ill. 2d at 182. This court stated:

"In this case, where a will has been admitted to probate and where the plaintiffs have

engaged an attorney to determine whether they should file a will contest, have decided not to contest the will, have entered into a settlement agreement for $125,000 (agreeing to release the other parties to the agreement *** from any and all claims and causes of action arising from any will, codicil or other undertaking by the parties), and have allowed the statutorily prescribed period in which to contest the will to expire (thereby establishing the validity of the will), we will not recognize a tort action for intentional interference with inheritance.

* * *

Given the facts in this case, if we were to allow the plaintiffs to maintain their tort action, we would be giving them a second bite of the apple and defeating the purpose of the exclusivity of a will contest under section 8-1." *Id.* at 184-85.

With this court's decision in *Robinson*, the rule developed that the tort action is not available "where the remedy of a will contest is available and would provide the injured party with adequate relief." *In re Estate of Hoover*, 160 Ill. App. 3d 964, 966 (1987); see *In re Estate of Knowlson*, 204 Ill. App. 3d 454, 457-58 (1990); *In re Estate of Roeseler*, 287 Ill. App. 3d 1003, 1021 (1997).

¶ 26    In *Estate of Ellis*, this court distinguished *Robinson* and allowed the claim of intentional interference of testamentary expectancy to go forward. In 1964, the decedent executed a will naming plaintiff, Shriners Hospitals for Children, as a contingent beneficiary. In 1999, she executed a new will naming another as sole primary beneficiary. When decedent died in 2003, the 1999 will was probated, and the six-month period ran without any will contest being filed. It was not until 2006 that the plaintiff first became aware of its interest in the 1964 will. Plaintiff filed a complaint containing a will contest and a claim for intentional interference with a testamentary expectancy. *Ellis*, 236 Ill. 2d at 48-49.

¶ 27    This court explained: "Our holding in *Robinson* was limited to not recognizing the tort action where plaintiffs have an opportunity to contest a probated will but choose not to do so, and subsequently enter into an agreement to take no further court action." *Id.* at 54. We reasoned that, unlike the plaintiffs in *Robinson*, the plaintiff in *Ellis* "did not choose to forgo an opportunity to contest the probated will. It never had that opportunity." *Id.* We also concluded that our holding did not "extend to a plaintiff who fails to bring a tort claim within the period for filing a will contest, where the will contest remedy was available." *Id.* at 57.

¶ 28    In the case at bar, O'Meara asserts that the controlling distinction between *Robinson* and *Ellis* is the plaintiff's awareness of the probate proceeding. O'Meara reasons that the will contest remedy was not available to the plaintiff in *Ellis* because that plaintiff was unaware of its interest under the prior will, the execution of the subsequent will, or the probate proceeding. O'Meara argues that Bjork should be precluded from bringing her tort claim because she knew of the probate proceeding and actually participated therein.

¶ 29    We disagree. In *Robinson*, we expressed our concern of giving tort plaintiffs "a second bite of the apple and defeating the purpose of the exclusivity of a will contest under section 8-1." *Robinson*, 97 Ill. 2d at 185. This court refused to allow such plaintiffs to maintain a tort action that would have the practical effect of invalidating a will that had been validated through the Probate Act. *Id.* at 186. These concerns are not found in the case at bar.

¶ 30   Initially, the availability of probate relief to Bjork was only speculative, based on what actually occurred during the probate proceeding. Bjork never contested Dama's will. Rather, she filed petitions for citation. Section 16-2 of the Probate Act allows third-party claimants to bring two types of summary and informal citation proceedings, discovery and adjudication, concerning the right and title to property in the possession of the estate representative. Section 16-2 authorizes a circuit court sitting in probate to "hear the evidence offered by any party," and to determine the ownership of such property. 755 ILCS 5/16-2 (West 2008); see 1A Michael P. McElroy, Horner Probate Practice and Estates § 24:1 (4th ed. rev. 2002); 7 Ill. Jur. *Probate, Estates and Trusts* §§ 30:01 through 30:12 (2001). A citation proceeding, although it is historically neither an action at law nor a bill in equity, possesses the equitable aspects of a bill for discovery, in which it is necessary to acquire facts of which the party charged alone could have knowledge. The court may compel the person cited to disclose, on oath, whether or not he or she has estate property in his or her possession. *In re Estate of Lashmett*, 369 Ill. App. 3d 1013, 1017 (2007) (quoting 1A Michael P. McElroy, Horner Probate Practice and Estates § 24:3, at 390-91 (4th ed. rev. 2002)). In a citation proceeding, the admission of evidence lies within the discretion of the circuit court, subject to reversal only for clear abuse of discretion. *In re Estate of Weisberg*, 62 Ill. App. 3d 578, 586 (1978).

¶ 31   In the case at bar, the circuit court failed to order the deposition of Williams in the erroneous belief that it lacked the authority to do so. Error is committed when a trial court refuses to exercise its discretion in the erroneous belief that it has no discretion as to the question presented. *People v. Queen*, 56 Ill. 2d 560, 565 (1974); see, *e.g.*, *Moffitt v. Illinois Power Co.*, 248 Ill. App. 3d 752, 758 (1993); *Department of Public Aid ex rel. McNichols v. McNichols*, 243 Ill. App. 3d 119, 123 (1993). Before this court, counsel for O'Meara expressly concedes, correctly, that the circuit court's denial of Bjork's petition to depose Williams was erroneous. The circuit court's error reduced the availability of probate relief to Bjork to mere speculation. Accordingly, Bjork did not have the convenient and summary citation proceeding as the legislature intended. Since no adequate remedy was available through the probate proceeding, we conclude that Bjork's tort action was permissible.

¶ 32   Additionally, unlike the tort claims in *Robinson* and *Ellis*, Bjork's tort claim does not seek or require an invalidation of Dama's will. Bjork alleges that she was injured by not receiving the gift of the money in bank account number 612375, which Dama intended for Bjork to receive upon Dama's death, which Dama had actually taken steps toward perfecting as a gift, and which Dama intended to be a nonprobate asset separate and apart from his will. Bjork does not contest Dama's will in any way; she does not make any claim against Dama or his estate. Bjork does not seek title to the account, or the imposition of a constructive trust over the account and its proceeds. Rather, Bjork seeks money damages from O'Meara to compensate her for the damages that she sustained as a proximate result of O'Meara's tortious interference with her expectancy.

¶ 33   In sum, Bjork's tort claim does not implicate the concerns expressed by this court regarding certainty in property rights created by a probated will, and efficient and timely estate administration. The probate proceeding did not provide meaningful relief to Bjork. Also, Bjork's tort claim does not in any way seek to invalidate Dama's will.

¶ 34                                    III. CONCLUSION

¶ 35        For the foregoing reasons, the judgment of the appellate court and the order of the circuit court of Cook County are reversed, and the cause is remanded to the circuit court for further proceedings.


¶ 36        Appellate court judgment reversed.

¶ 37        Circuit court order reversed.

¶ 38        Cause remanded.