# Illinois Official Reports

## Appellate Court

---

**Construction Systems, Inc. v. FagelHaber, LLC**, 2015 IL App (1st) 141700

---

| | |
|---|---|
| Appellate Court Caption | CONSTRUCTION SYSTEMS, INC., an Illinois Foreign Corporation, d/b/a Construction Systems of Minnesota, Plaintiff-Appellant, v. FAGELHABER, LLC, an Illinois Limited Liability Corporation, n/k/a Thompson Coburn LLP, d/b/a Thompson Coburn Fagel Haber, Defendant-Appellee. |
| District & No. | First District, Third Division<br>Docket No. 1-14-1700 |
| Filed | June 30, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-L-942; the Hon. John C. Griffin and the Hon. Brigid M. McGrath, Judges, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Carponelli & Krug, of Barrington (Raymond M. Rudnick and Brian M. Ozog, of counsel), for appellant.<br><br>Donahue Brown Mathewson & Smyth, LLC, of Chicago (Donald J. Brown, Jr., Karen Kies DeGrand, and Michael J. Borree, of counsel), for appellee. |
| Panel | JUSTICE MASON delivered the judgment of the court, with opinion.<br>Presiding Justice Pucinski and Justice Hyman concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff-appellant Construction Systems, Inc., filed a legal malpractice action against defendant-appellee FagelHaber, LLC, on the grounds that FagelHaber failed to perfect a mechanic's lien on behalf of Construction Systems, resulting in the subordination of the mechanic's lien to a mortgagee's lien. The trial court first dismissed Construction Systems' prayer for prejudgment interest with prejudice. The case was then transferred to another judge and FagelHaber's motion for summary judgment was granted. On appeal, Construction Systems contends the trial court erred in granting summary judgment because the release signed by the parties was intended solely to resolve an outstanding fee dispute and Construction Systems was not aware of its malpractice claim at the time the release was signed. Construction Systems also claims the trial court erred in striking its prayer for prejudgment interest because the statute on which the underlying claim is based allows prejudgment interest. For the reasons that follow, we reverse the judgment of the circuit court of Cook County and remand for further proceedings.

¶ 2                                   BACKGROUND

¶ 3    On May 30, 2002, Construction Systems, a steel fabrication business that provides material and labor on construction projects, commenced work on a building project located at 6 North Michigan Avenue in Chicago. Global Real Estate Investors, LLC (Global), was the owner of the project and AMEC Construction Services, Inc. (AMEC), was hired as construction manager and agent for the project.

¶ 4    Global's members were Bassam Haj Yousif and Romel Esmail. Yousif and Esmail also established a company called Construction Services International, purportedly to operate as the general contractor for the project. However, this company's registration with the Secretary of State was repeatedly allowed to lapse, it was not licensed by the city of Chicago as a general contractor, it did not obtain the necessary permits and did not perform any of the necessary functions of a general contractor, and AMEC was forced to act as general contractor for the project despite the fact that its contract with Global did not provide for such services.

¶ 5    The contract amount for the work to be performed by Construction Systems was $2,684,823. During the course of its work on the project, Construction Systems supplied additional materials and labor in the amount of $1,372,477.

¶ 6    On June 19, 2003, after failing to receive payments for a number of months, Construction Systems stopped work on the project. A few additional payments were made, leaving an outstanding balance owed to Construction Systems of $3,146,200. Construction Systems then retained FagelHaber to record a lien and protect its interest under the Illinois Mechanics Lien Act (Act) (770 ILCS 60/1 *et seq.* (West 2012)), and to collect payment of the outstanding balance.

¶ 7    On April 3, 2003, FagelHaber performed a tract index search on 6 North Michigan. On May 6, 2003, Cosmopolitan Bank and Trust (Cosmopolitan) recorded a mortgage on 6 North Michigan. Without updating the tract index search, on August 6, 2003, FagelHaber served a notice of lien on Global and AMEC. The notice of lien was not served on Cosmopolitan. FagelHaber recorded a mechanic's lien in the amount of $3,146,200 against 6 North Michigan

on October 6, 2003, but the lien likewise failed to include Cosmopolitan as an interested party and Cosmopolitan was not included on the service list.

¶ 8    On December 19, 2003, FagelHaber performed a second tract index search and the results of that search disclosed Cosmopolitan as an interested party. On January 14, 2004, Cosmopolitan filed an appearance in Pinnacle Waste Services, Inc. v. North Star Trust Company, No. 02-CH-09958 (Cir. Ct. Cook Co.) (hereinafter Pinnacle litigation), litigation involving various mechanics' liens, including Construction Systems' lien. FagelHaber represented Construction Systems in the Pinnacle litigation, an action Construction Systems joined but did not initiate. In late 2004, FBOP Corporation (FBOP) acquired Cosmopolitan and filed an appearance in the Pinnacle litigation.

¶ 9    Construction Systems became dissatisfied with FagelHaber's representation. Due to a lack of progress and the amount of fees charged by FagelHaber, Construction Systems retained Karen Berres as substitute counsel in the case. Berres had previously represented Construction Systems in connection with the construction project but had not been involved with either the filing of the mechanic's lien or the Pinnacle litigation. On August 28, 2004, FagelHaber was allowed to withdraw as counsel for Construction Systems. The court ordered FagelHaber to turn over the client file in seven days. Berres received some documentation from FagelHaber but later learned she had not received the entire file. FagelHaber withheld the complete file until the issue of unpaid legal fees was resolved. As far as the record shows, FagelHaber never disclosed to Construction Systems its failure to serve Cosmopolitan with the notice of lien or include Cosmopolitan as an interested party on the recorded lien between the date it performed the updated tract index search in December 2003 and August 2004 when FagelHaber withdrew as Construction Systems' counsel.

¶ 10   In November 2004, Construction Systems and FagelHaber executed a general release as part of a settlement of the fee dispute. The release stated that Construction Systems engaged FagelHaber to perform legal services and had an outstanding balance due the firm in the amount of $81,566.80, defined as "the Indebtedness." The release further stated: "Disputes and disagreements have arisen between FagelHaber and [Construction Systems], including, without limitation, with regard to the Indebtedness. FagelHaber and [Construction Systems] desire to compromise and settle all disputes and disagreements between them, including, without limitation, the payment and satisfaction of the Indebtedness ***." The release then provided details of the settlement with dates and amounts of the payments agreed to by the parties, and noted that upon receipt of the first payment, FagelHaber would release all remaining documents in the case file. Finally, the release provided:

"[Construction Systems] *** does hereby fully remise, release and forever discharge FagelHaber *** of and from any and all claims, demands, actions, causes of action, suits, *** existing at the date hereof or hereafter arising, both known and unknown, foreseeable and unforeseeable, *** arising from or in connection with any matter, *** including, without limitation, any Claims in connection with the legal services provided by FagelHaber to [Construction Systems] or the Indebtedness."

¶ 11   In the meantime, Construction Systems and FBOP (as successor to Cosmopolitan) filed cross-motions for summary judgment in the Pinnacle litigation. In its motion for summary judgment, Construction Systems sought to determine the priority of its mechanic's lien with respect to the mortgage of FBOP and determine the validity of its lien. Construction Systems argued that it was not subject to the notice requirement in section 24 of the Act (770 ILCS

60/24 (West 2012)) ("Sub-contractors *** furnishing labor, materials, fixtures, apparatus, machinery, or services *** shall, within 90 days after the completion thereof, *** cause a written notice of his or her claim and the amount due or to become due thereunder, to be sent by registered or certified mail *** or personally served on the owner of record *** and to the lending agency ***."). See *Parkway Bank & Trust Co. v. Meseljevic*, 406 Ill. App. 3d 435, 447 (2010) ("If the subcontractor does not provide a known lender with the mandated section 24 notice, the lien is unenforceable against the lender."). Construction Systems argued that the notice requirement did not apply because it was an original contractor rather than a subcontractor. In the alternative, Construction Systems argued that even if it was a subcontractor, it was not subject to the notice requirement because Cosmopolitan had notice of its work on the project.

¶ 12    FBOP argued that Construction Systems was a subcontractor and therefore subject to section 24's notice requirement. On August 29, 2007, the trial court denied both motions for summary judgment and FBOP and Construction Systems entered into settlement negotiations. In December 2007, Construction Systems settled its claim with FBOP in exchange for the payment of $1,825,000.

¶ 13    On January 27, 2009, Construction Systems filed the underlying legal malpractice action against FagelHaber, alleging that as a result of FagelHaber's failure to perfect its lien, Construction Systems' lien was subordinate to Cosmopolitan's lien and it suffered a loss of $1,321,200. FagelHaber filed a motion to dismiss, claiming that the general release signed by the parties as part of the fee dispute barred all claims relating both to fees and to legal services.

¶ 14    Berres testified at her deposition that she had no knowledge that FagelHaber failed to perfect the lien when the release was signed on November 10, 2004. She further testified that the fee dispute was the only matter she was aware of at the time the release was executed. On January 29, 2010, the trial court denied the motion to dismiss, concluding that it could not determine as a matter of law that the claim was within the contemplation of the parties at the time the release was executed.

¶ 15    On January 25, 2012, Construction Systems filed its first amended complaint in which it sought interest pursuant to section 21 of the Act (770 ILCS 60/21 (West 2012)), which Construction Systems claimed it would have recovered but for FagelHaber's negligence. FagelHaber filed a motion to dismiss the request for interest with prejudice and the motion was granted on June 13, 2012. The trial court found that although the underlying case dealt with a mechanic's lien, the action against FagelHaber was for legal malpractice and prejudgment interest is not available in legal malpractice actions.

¶ 16    Yousif and Esmail were not parties and did not otherwise participate in any capacity in the lawsuits related to the project. Yousif was under indictment for fraud and eventually pled guilty and Esmail left the country. Testimony indicated that Global was actually a land trust, with Yousif and Esmail as the sole beneficiaries, and had no assets. Construction Services International was a corporation but it likewise had no assets.

¶ 17    The written contract in the amount of $2,684,823 between Construction Systems, the purported subcontractor, and Construction Services International, the purported general contractor, was never signed. It contained multiple phrases and sentences that had been crossed out and handwritten additions with initials next to each of the changes, but was not executed by either party.

¶ 18    Perry Haberer, the vice president of Construction Systems, was deposed once during the Pinnacle litigation and twice during the underlying malpractice litigation against FagelHaber. Haberer testified that the bid he initially submitted for the project was accepted, and when that happens, the bid is typically considered the contract. He was directed to move forward by AMEC on the basis of the bid, and Construction Systems began the work without any type of formal contract in place. The formal contract was not drawn up until much later and was delivered to him by AMEC, not Construction Services International, the putative general contractor. Haberer crossed out certain items in the contract and added handwritten modifications. Haberer received correspondence from AMEC in both September and December 2002 asking him to return a signed copy of the contract. But Haberer was instructed by Berres not to sign the contract and he informed AMEC that Construction Systems would complete the project under the terms of its bid proposal.

¶ 19    In addition to the base contract amount, Construction Systems submitted numerous cost estimates for extra work based on changes requested by either the owners or AMEC. Several AMEC employees were also deposed in the legal malpractice suit and conflicting testimony was provided regarding whether these additional cost estimates had been approved. Construction Systems contended that more than 100 change orders were approved over the course of the project. Haberer testified that instead of his cost estimates being incorporated into change orders, which is how it is normally done, on this project he simply received verbal approval from AMEC to proceed with the work detailed in the cost estimate. It was Haberer's understanding that AMEC was the general contractor for the project.

¶ 20    FagelHaber filed a motion for summary judgment, claiming: (1) Construction Systems' legal malpractice action was barred by judicial estoppel; (2) no genuine issue of material fact existed on the issue of whether Construction Systems was a subcontractor; (3) the release signed by both parties barred all future claims related to legal services provided by FagelHaber; and (4) FagelHaber was entitled to partial summary judgment on Construction Systems' claim for sums due to extra work. On May 14, 2014, the trial court granted summary judgment on the ground that the release barred known and unknown claims, including those for legal malpractice. The court denied summary judgment on the first two grounds, finding that the action was not barred by judicial estoppel and that a genuine issue of material fact existed regarding Construction Systems' status as a subcontractor. Because it granted summary judgment based on the release, the trial court did not consider whether FagelHaber was entitled to partial summary judgment on the extra work issue. Construction Systems timely filed this appeal.

¶ 21                                ANALYSIS

¶ 22    Construction Systems contends that FagelHaber was not entitled to summary judgment because the release signed by the parties related to an outstanding fee dispute and did not bar the subsequent claim for legal malpractice. Construction Systems further claims that it is entitled to prejudgment interest as part of its damages in the legal malpractice action because the statute upon which the underlying claim is based allows for recovery of prejudgment interest.

¶ 23    Summary judgment is appropriate when the pleadings, depositions, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2012);

*Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). "In determining whether a genuine issue as to any material fact exists, a court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent. A triable issue precluding summary judgment exists where the material facts are disputed or where, the material facts being undisputed, reasonable persons might draw different inferences from the undisputed facts." *Id*. We review an order granting summary judgment *de novo*. *Id*.

¶ 24                                    The Release

¶ 25     A release is a contract and, as such, is governed by contract law. *Farm Credit Bank of St. Louis v. Whitlock*, 144 Ill. 2d 440, 447 (1991). Where the terms of the release are clear and explicit, the court must enforce them as written and construction of the release is a question of law. *Rakowski v. Lucente*, 104 Ill. 2d 317, 323 (1984). "Releases are strictly construed against the benefitting party and must spell out the intention of the parties with great particularity." *Fuller Family Holdings, LLC v. Northern Trust Co.*, 371 Ill. App. 3d 605, 614 (2007) (citing *Scott & Fetzer Co. v. Montgomery Ward & Co.*, 112 Ill. 2d 378, 395 (1986)). The scope and effect of the release are controlled by the intention of the parties, and this intent is determined not only from the express language of the release but also from the circumstances surrounding its execution. *Doctor's Associates, Inc. v. Duree*, 319 Ill. App. 3d 1032, 1045 (2001).

¶ 26     Under Illinois law, a release will not be construed to defeat a valid claim that was not contemplated by the parties at the time the agreement was executed, and general words of release are inapplicable to claims that were unknown to the releasing party. *Whitlock*, 144 Ill. 2d at 447. Indeed, "[n]o form of words, no matter how all encompassing, will foreclose scrutiny of a release [citation] or prevent a reviewing court from inquiring into surrounding circumstances to ascertain whether it was fairly made and accurately reflected the intention of the parties." (Internal quotation marks omitted.) *Carlile v. Snap-on Tools*, 271 Ill. App. 3d 833, 839 (1995). Thus, where the releasing party is unaware of other claims, general releases are restricted to the specific claims contained in the release agreement. *Whitlock*, 144 Ill. 2d at 447.

¶ 27     Here, although the release was broadly drafted to include phrases such as "without limitation" and general language purportedly barring any claims, "known and unknown," in connection with legal services provided by FagelHaber, the only claim referenced in the release was the outstanding balance owed for legal fees. In fact, "the Indebtedness" is mentioned more than half a dozen times in the release. The release provided that Construction Systems would pay a total of $60,000 in three separate installments of $20,000 each and, in exchange, FagelHaber would release the client file upon timely receipt of the first payment.

¶ 28     Certainly, FagelHaber was aware after it performed the second tract index search that Cosmopolitan was an interested party at the time the lien was filed and that Cosmopolitan was not included either on the notice of lien or the recorded lien. Thus, it is likely that FagelHaber either knew or should have known at the time the release was executed that Construction Systems had a potential legal malpractice claim. As noted above, there is no indication in the record that FagelHaber ever informed its client of the failure to perfect the lien as against the lender's interest. This court has noted that although a law firm crafting a release in an effort to protect itself from all potential claims may have contemplated certain other claims, such an undisclosed intent does not bring those claims within the contemplation of both parties. *Thornwood, Inc. v. Jenner & Block*, 344 Ill. App. 3d 15, 22 (2003). Moreover, where, as here, a fiduciary relationship exists between the parties, the defendant has the burden to show that a

- 6 -

full and frank disclosure of all relevant information was made to the other party. *Id*. at 25-26 (quoting *Rizzo v. Rizzo*, 3 Ill. 2d 291, 305 (1954), and *Peskin v. Deutsch*, 134 Ill. App. 3d 48, 55 (1985)).

¶ 29    Berres was representing Construction Systems at the time it signed the release. Berres was not aware at the time the release was executed that FagelHaber had failed to perfect the lien and, thus, was not aware of a potential legal malpractice claim. The circumstances surrounding the execution of the release lend support to this testimony, as Berres clearly did not have the entire client file at the time of its execution, given that obtaining the client file in exchange for payment of legal fees was the subject matter of the release and the specific issue in dispute between the parties.

¶ 30    The case relied on by the trial court, *Goodman v. Hanson*, 408 Ill. App. 3d 285, 299 (2011), is inapposite. In *Goodman*, a client sued his former attorney for malpractice based on the attorney's handling of certain Illinois estate and tax matters. After the case settled, the parties executed a general release, which barred any and all claims that could have been brought in the first malpractice action as well as any claims related to the management of the trust and estate. *Id*. at 293. The client later filed a second malpractice action for claims related to a federal tax return. This court concluded the general release barred the second action because the federal tax claims could have been brought as part of the original malpractice action and the claims fell within the specific language of the release. *Id*. at 294, 299.

¶ 31    Here, there is no evidence to suggest Construction Systems contemplated a potential legal malpractice claim at the time the release was executed. Construction Systems was not satisfied with the progress of the lawsuit filed to enforce its lien and thought FagelHaber was billing excessive amounts. Construction Systems then retained substitute counsel but, despite a court order to turn over the client file, FagelHaber withheld the file because of a dispute over fees. Given that FagelHaber's alleged legal malpractice resulted in a claimed loss of $1.3 million, it is highly unlikely that Construction Systems–in exchange for a $20,000 reduction in legal fees–would have agreed to release its legal malpractice claim. There is, at a minimum, a genuine issue of material fact on this point.

¶ 32    Similarly, FagelHaber's reliance on *Gavery v. McMahon & Elliott*, 283 Ill. App. 3d 484 (1996), is unavailing. In *Gavery*, the plaintiff entered into an asset purchase agreement and a noncompetition agreement to sell his medical practice while represented by the defendant law firm. *Id*. at 485. In a later dispute with the purchaser, the plaintiff was represented by a different law firm. In order to facilitate cooperation between the two law firms, the plaintiff agreed to release the original law firm from any claims he might have against it. The language of the release was "very specific and unambiguous" and included recitals stating that the plaintiff had been informed by the new law firm prior to executing the release that he might have claims against the original law firm, as well as language specifically referencing the asset purchase agreement and the noncompetition agreement. *Id*. at 487. After executing the release, the plaintiff filed claims against the original law firm related to the noncompetition agreement. This court held that the release barred the claims because it was specific and unambiguous, the claims fell within the scope of the release, and the plaintiff was advised by separate counsel that he may have claims against the original law firm arising out of the agreements. *Id*. at 488-89.

¶ 33    In contrast, there is no evidence prior to the execution of the release that Construction Systems was advised that it may have a legal malpractice claim against FagelHaber, and the

release contains no recitals to that effect. Moreover, the only language in the release related to FagelHaber's overall representation is the general clause barring any claims in connection with the legal services provided. But because the release specifically identifies the dispute over legal fees as the issue being negotiated by the parties, the inclusion of one clause containing broad language purporting to cover *any* claim related to FagelHaber's representation cannot operate to bring legal malpractice claims within the contemplation of the parties. Likewise, because of the specific language relating to the Indebtedness in the release, the phrase "known and unknown" does not indicate that the parties intended to bar legal malpractice claims.

¶ 34   Both the language of the release and the surrounding circumstances establish that a genuine issue of material fact exists regarding whether legal malpractice claims were within the contemplation of the parties at the time the release was executed. Therefore, the trial court erred in granting summary judgment in favor of FagelHaber on the basis of the release.

¶ 35                                        Judicial Estoppel

¶ 36   Because this court may affirm on any basis appearing in the record, regardless of whether the lower court relied on that ground (see *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004)), we address FagelHaber's contention that the doctrine of judicial estoppel warranted summary judgment in its favor. FagelHaber argues that all of the elements of judicial estoppel have been established and that the trial court erred in concluding that because Construction Systems' motion for summary judgment was denied, it obtained no benefit.

¶ 37   Judicial estoppel is an equitable doctrine designed to prevent a party who takes a certain position in a legal proceeding from taking the contrary position in a subsequent legal proceeding. *Moy v. Ng*, 371 Ill. App. 3d 957, 962 (2007). The following elements are required for the doctrine to apply: (1) a party must have taken two positions; (2) the positions must have been taken in judicial proceedings; (3) the positions must be given under oath; (4) the party must have successfully maintained the first position and obtained some benefit thereby; and (5) the two positions must be "totally inconsistent." (Internal quotation marks omitted.) *Holland v. Schwan's Home Service, Inc.*, 2013 IL App (5th) 110560, ¶ 113.

¶ 38   Judicial estoppel is a flexible doctrine that should not be used when to do so would result in an injustice. *Ceres Terminals, Inc. v. Chicago City Bank & Trust Co.*, 259 Ill. App. 3d 836, 850-51 (1994). The doctrine's design and function are to protect the court from unscrupulous litigants and preserve the integrity of the court system. *Id.* at 856. Courts have warned that the doctrine is "an extraordinary one which should be applied with caution" because it impinges on the trial court's role as fact finder by "preclud[ing] a contradictory position without examining the truth of either statement." (Internal quotation marks omitted.) *Id.* at 856-57.

¶ 39   We review a trial court's determination of whether to apply judicial estoppel under an abuse of discretion standard. *Holland*, 2013 IL App (5th) 110560, ¶ 114. An abuse of discretion occurs only when the trial court's decision is arbitrary, fanciful or unreasonable or where no reasonable person would adopt the view taken by the trial court. *Id.*

¶ 40   The trial court denied FagelHaber's motion for summary judgment on judicial estoppel grounds for three reasons. First, the court noted that while Construction Systems presented alternative arguments in the Pinnacle litigation, FagelHaber had not established that the positions were factually inconsistent. Second, the court found persuasive Construction Systems' argument that it was forced to advance alternative arguments because of

FagelHaber's professional negligence. Third, the alternative arguments were denied and, therefore, did not benefit Construction Systems.

¶ 41    In the Pinnacle litigation, Construction Systems included alternative arguments in its motion for summary judgment. First, Construction Systems argued that it was actually an original contractor and, therefore, not subject to the notice requirement in section 24 of the Act (770 ILCS 60/24 (West 2012)). In the alternative, Construction Systems argued that even if it was a subcontractor, it was not subject to the notice requirement because Cosmopolitan had notice of Construction Systems' work on the project.

¶ 42    We agree with the trial court that although Construction Systems presented alternative legal arguments, these arguments did not entail factual inconsistencies. See *Giannini v. Kumho Tire U.S.A., Inc.*, 385 Ill. App. 3d 1013, 1018-19 (2008) (judicial estoppel does not apply to all types of inconsistencies but only to factual inconsistencies). On the separate issue of whether Construction Systems could prove the existence of a subcontract with AMEC, the trial court determined that genuine issues of material fact existed with regard to Construction Systems' status.

¶ 43    Our examination of the record discloses evidence in support of both alternative positions–that Construction Systems was an original contractor and that it was a subcontractor. At one point, Haberer testified that he believed his verbal agreement was with the owners directly, thus making him an original contractor. There was conflicting testimony regarding whether Construction Services International was, in fact, a general contractor. The unsigned contract identified Construction Systems as a subcontractor and the contracting party was identified as Construction Services International, the purported general contractor. However, Haberer also testified that he believed his verbal agreement was actually with AMEC, the construction manager. At another point during one of his depositions, Haberer testified that he believed AMEC was a general contractor. Therefore, we disagree with FagelHaber's contention that "[t]he record eliminates any genuine issue of fact" on the issue of whether Construction Systems was a subcontractor. Given that Haberer would not have been privy to the corporate structure of and interrelationships between and among Global, AMEC and Construction Services International, we do not view this as a factual inconsistency implicating judicial estoppel. Ultimately, Construction Systems' legal status as a contractor or a subcontractor will have to be determined by a trier of fact after hearing evidence as part of the "case within a case" in the malpractice action. See *Eastman v. Messner*, 188 Ill. 2d 404, 411 (1999); *Fox v. Berks*, 334 Ill. App. 3d 815, 817 (2002).

¶ 44    Moreover, we note that because of FagelHaber's alleged malpractice in failing to perfect the lien as to Cosmopolitan, Construction Systems was forced to attempt to salvage the priority of its lien by advancing the legal argument that it was not subject to the notice requirement. The fact that Construction Systems pursued all available legal arguments against FBOP as successor to Cosmopolitan in an attempt to recover something rather than nothing on its lien inures to FagelHaber's benefit in the event that Construction Systems is successful in its legal malpractice action because FagelHaber will be entitled to offset the settlement amount against any judgment in the malpractice case.

¶ 45    Finally, we note that FagelHaber cites authority for the proposition that a settlement may establish that a party has prevailed and thus received a benefit in the context of judicial estoppel (see *Smeilis v. Lipkis*, 2012 IL App (1st) 103385, ¶¶ 51-53). However, under the facts of this case, Construction Systems' settlement with FBOP resulted in recovering an amount

less than it was owed in order to avoid the possibility of recovering nothing. To the extent that Construction Systems could have prevailed in recovering the entirety of its lien had FagelHaber given notice to Cosmopolitan, the measure of damages in the malpractice suit would be the difference between the settlement amount and the full amount of the lien. Therefore, the fact that Construction Systems presented alternative arguments would not allow it to obtain a double recovery but merely put it in the same position it would have been had the lien been properly perfected.

¶ 46    As previously noted, judicial estoppel is an extraordinary doctrine that should be applied with caution because it impinges on the trial court's role as fact finder and should not be used when to do so would result in an injustice. We cannot say that the trial court abused its discretion in declining to apply the doctrine under these circumstances.

¶ 47                                         Prejudgment Interest

¶ 48    Construction Systems also claims that it is entitled to prejudgment interest pursuant to the Act as part of its damages in the legal malpractice action and the trial court erred in dismissing its request for prejudgment interest with prejudice. Construction Systems concedes that prejudgment interest is not available in malpractice actions but contends that because the underlying basis of the claim is FagelHaber's failure to perfect the lien under the Act, and section 21 of the Act (770 ILCS 60/21(a) (West 2012)) provides for prejudgment interest, it may be recovered as an element of damages. We agree.

¶ 49    FagelHaber filed a motion to dismiss the prayer for prejudgment interest pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2012)). Section 2-619.1 of the Code allows a party to combine a section 2-615 motion to dismiss with a section 2-619 motion to dismiss. 735 ILCS 5/2-619.1 (West 2012). A section 2-615 motion to dismiss tests the legal sufficiency of the complaint while a section 2-619 motion to dismiss admits the sufficiency of the complaint but asserts affirmative matter that defeats the claim. *Bjork v. O'Meara*, 2013 IL 114044, ¶ 21. We review *de novo* an order granting a motion to dismiss under either section 2-615 or section 2-619. *Id.*

¶ 50    In its first amended complaint, Construction Systems sought judgment against FagelHaber in the amount of $1,321,200 "plus the interest it is entitled to under the Illinois Interest Act and the Illinois Mechanics Lien Act." FagelHaber filed a motion to dismiss and strike the request for interest on the ground that prejudgment interest is not recoverable in legal malpractice actions. Relying on *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill. 2d 218 (2006), the trial court determined that although the underlying suit dealt with a mechanic's lien, the Act did not apply to the legal malpractice suit and prejudgment interest was not available.

¶ 51    FagelHaber relies on *Goldfine v. Barack, Ferrazzano, Kirschbaum & Perlman*, 2014 IL 116362, ¶¶ 35-37, as additional support for its argument that prejudgment interest is not available here. This reliance is misplaced. In *Goldfine*, our supreme court distinguished cases in which the interest is hypothetical and depends on the amount of the judgment the party would have received but for the alleged malpractice–the situation in *Tri-G*–and cases in which the interest is a component of the remedial relief the plaintiffs would have recovered in the underlying case but for the alleged malpractice. *Id.* ¶ 37.

¶ 52    Here, the interest is not hypothetical but is based on the amount of the mechanic's lien that should have been perfected and, under the Act, is a component of the relief Construction Systems would have been awarded but for FagelHaber's failure to perfect the lien. Pursuant to

the Act, the interest is not based on the amount of a hypothetical judgment but on the amount of the lien. Therefore, *Tri-G* is inapplicable and the trial court erred in dismissing Construction Systems' request for prejudgment interest with prejudice.

¶ 53                                    Extra Work Claim

¶ 54    The final ground on which FagelHaber seeks to uphold its right to summary judgment, at least in part, relates to charges for extra work included in the lien asserted by Construction Systems. The mechanic's lien filed by Construction Systems included $1,372,477, which Construction Systems claimed represented charges for extra work on the project ordered by the owner. Citing provisions in the written documents requiring the owner's approval in writing of any change orders and Haberer's testimony that Construction Systems never received written approval for the extra work, FagelHaber argues that Construction Systems cannot demonstrate by clear and convincing evidence its right to recover such sums. See *Ambrose v. Biggs*, 156 Ill. App. 3d 515, 520 (1987) (in order to recover for extra work, contractor must prove by clear and convincing evidence that extras were (i) outside the original contract, (ii) requested and approved by the owner, and (iii) not necessitated by the contractor's own conduct or undertaken voluntarily by the contractor (citing *Watson Lumber Co. v. Guennewig*, 79 Ill. App. 2d 377, 389-90 (1967))). As noted in *Watson,* an owner's agreement to pay for extras may be evidenced by either words or conduct. *Watson*, 79 Ill. App. 2d at 390.

¶ 55    Our review of the record convinces us that there are genuine issues of material fact as to whether the extra work performed by Construction Systems on the project was approved by the owners. Haberer testified that the owners requested the additional work and that Construction Systems submitted 151 change orders and was assured on numerous occasions that it would be paid. While a trier of fact is certainly entitled to consider the lack of written approval in determining whether Construction Systems has satisfied its burden, this fact is not determinative. Thus, we reject FagelHaber's argument that it was entitled to partial summary judgment on this issue.

¶ 56                                       CONCLUSION

¶ 57    The trial court erred in granting summary judgment in favor of FagelHaber on the basis of the language in the release because genuine issues of material fact exist regarding whether legal malpractice claims were within the contemplation of the parties at the time the release was executed. The trial court did not abuse its discretion in declining to apply judicial estoppel under the circumstances of this case. The trial court further erred in granting the motion to dismiss the request for prejudgment interest because the interest sought is a component of the remedial relief that Construction Systems would have been entitled to but for the alleged malpractice. Finally, FagelHaber is not entitled to partial summary judgment on Construction System's claim for extra work. The trial court's orders entering judgment in favor of FagelHaber and dismissing the request for interest with prejudice are reversed and the cause is remanded for further proceedings.

¶ 58    Reversed and remanded.