NOTICE
Decision filed 04/21/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 190405-U

NO. 5-19-0405

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFHT DISTRICT

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| RICK STUMEIER, as Assignee of Scott Langford, | ) ) ) | Appeal from the Circuit Court of Effingham County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 19-L-19 |
| HOWARD JANIS, | ) ) | Honorable Jeffrey A. DeLong, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE WELCH delivered the judgment of the court.
Justices Cates and Wharton concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court's order dismissing the plaintiff's complaint based on judicial estoppel is vacated where the court failed to exercise its discretion before imposing judicial estoppel.  Thus, we remand for further proceedings.

¶ 2    The plaintiff, Rick Stumeier, as assignee of Scott Langford, appeals the circuit court of Effingham County's order imposing judicial estoppel and dismissing his complaint against the defendant, Howard Janis.  For the reasons that follow, we vacate the trial court's order and remand for further proceedings.

1

¶ 3                                    I. BACKGROUND

¶ 4    On April 3, 2013, Janis entered into a timber purchase agreement (agreement) with

Timber Marketing Service (Timber Marketing) in which Timber Marketing purchased a

certain number of trees from Janis's property and was responsible for the tree removal.

Langford signed the contract on behalf of Timber Marketing.  The agreement stated as

follows regarding the boundary line of the property:

> "[Janis] agrees to designate by stakes or other markers appropriately placed, the
> boundary lines of property on which said timber is located.  [Janis] agrees to
> indemnify and save harmless [Langford] from any claims of third parties for
> damages resulting from errors in location of said boundary lines."

¶ 5    In accordance with this agreement, Langford removed trees from Janis's property.

However, Langford also mistakenly removed trees from the neighboring owners' property;

the neighboring property was owned by Rick and Deb Stumeier (the Stumeiers).

¶ 6    On August 31, 2015, the Stumeiers filed a complaint against both Langford and

Janis in Effingham County circuit court (case No. 15-L-38), in which they sought damages

for the harm caused to their property from the logging operation.  The complaint alleged,

in pertinent part, that Langford was negligent in locating the boundary lines and in

removing trees on the Stumeiers' property and that Janis was negligent in allowing

Langford to harvest trees on their property.  Thereafter, Janis filed a motion for summary

judgment, contending that he could not be held liable for Langford's negligence because

he retained no control over the work that Langford, as an independent contractor,

performed.  In response, the Stumeiers contended that Janis was liable under the indemnity

language in the agreement, which made Janis responsible for appropriately marking the

boundary lines and made him liable for any damages incurred due to errors in marking the boundaries. On April 5, 2018, the trial court entered an order, granting summary judgment in favor of Janis and against the Stumeiers. In the order, the court stated that the Stumeiers "confessed judgment" as to the motion for summary judgment. Thereafter, on August 15, 2018, a default judgment was entered against Langford, and he was ordered to pay $324,953.70 and court costs to the Stumeiers as damages. Langford was incarcerated at this time.

¶ 7     On May 22, 2019, after the default judgment was entered, Langford executed an assignment of his claim for indemnity against Janis. The indemnity claim was based on the written agreement between Janis and Langford which specifically provided that Janis would indemnify Langford for any damages arising out of the misidentification of the boundary lines of the property. In exchange for the assignment, Rick Stumeier agreed to forgo any further collection efforts against Langford on the judgment entered against Langford until the indemnity provision was resolved.

¶ 8     On May 23, 2019, Rick Stumeier,[1] as assignee of Langford, filed the complaint at issue in this appeal (case No. 19-L-19) against Janis, seeking indemnity under the agreement; Rick Stumeier argued that his right to bring a lawsuit against Janis was through Langford. In the complaint, Rick Stumeier requested that the trial court order Janis to pay $324,953.70, which represented the amount of damages that Langford was ordered to pay in the previous case. On July 1, 2019, Janis filed a motion to dismiss the complaint, making

---

[1]Deb Stumeier was not named as a plaintiff in this case.

3

the following allegations: the court, in granting summary judgment in Janis's favor in case No. 15-L-38, had already ruled that Janis cannot be held liable for Langford's negligence; and that the issue of the indemnity language in the agreement was before the court at this time. Because the court had already ruled that Janis could not be held liable for Langford's negligence, the complaint argued that Rick Stumeier, through Langford, was judicially estopped from bringing a claim against Janis.

¶ 9    On August 30, 2019, the trial court held a hearing on the motion to dismiss. At the hearing, Janis's counsel clarified that the motion to dismiss was filed pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2018)). Although he acknowledged that the cause of action in the underlying case (case No. 15-L-38) was negligence while the cause of action here was breach of contract, he contended that the issues were the same, *i.e.*, whether the indemnity clause in the agreement made Janis liable for Langford's alleged negligence in misidentifying the property boundary lines. In support of his argument that the indemnity issue was previously raised, counsel noted that the Stumeiers' response to the motion for summary judgment in the underlying case contended that, pursuant to the agreement between Janis and Langford, it was Janis's responsibility to appropriately mark the boundary line and that Janis was responsible for any damages that resulted from a misidentification of the boundary. He contended that because the court had already determined that Janis could not be liable for Langford's negligence, Rick Stumeier was judicially estopped from raising the issue again.

¶ 10    In contrast, Rick Stumeier's counsel contended that the issue in the previous case was whether Janis was liable as an agent or employee of Langford. Counsel argued that

the present case was brought by Langford against Janis, that Rick Stumeier was prosecuting that claim pursuant to the assignment, and that the agreement between Langford and Janis was not at issue in the underlying litigation. Counsel then argued that the trial court had taken no position with regard to that agreement or the indemnity provision in that agreement. He further argued that the cause of action for indemnity did not exist at the time of the underlying lawsuit because it did not ripen until the judgment was entered against Langford.

¶ 11 In response, Janis's counsel argued as follows:

> "Essentially what counsel is trying to do is an end run around the law and play a little bit of a game with the law where the Motion for Summary Judgment was going to be granted, so he accepted that and got us out of the case so that he could then move forward with the case against Langford. And then turn around and try and sue us for the same thing; but sue us through Langford, because he recognized that he wouldn't have a claim himself."

Counsel then contended that the issue, regardless of whether it was based on the agreement, was a negligence issue, and Rick Stumeier was attempting to argue that Langford was negligent and impose that negligence on Janis.

¶ 12 On September 18, 2019, the trial court entered an order, granting Janis's motion to dismiss. In the order, the court recited the following five requirements for a court to invoke the doctrine of judicial estoppel: the party to be estopped must have (1) taken two positions, (2) that are factually inconsistent, (3) in separate judicial or quasi-judicial administrative proceedings, (4) intending for the trier of fact to accept the truth of the facts alleged, and (5) have succeeded in the first proceeding and received some benefit from it. Applying these requirements, the court stated as follows:

5

"In this matter [Rick Stumeier] confessed summary judgment in 2015 L 38. In that matter [Rick Stumeier's] response to the motion for summary judgment argued that Janis was liable based on the indemnity language of the contract. That motion never went to hearing as [Rick Stumeier] confessed the motion and an order was entered for summary judgment by Janis against [Rick Stumeier]. The 2015 case was a separate judicial proceeding. The docket entry made in the 2015 case makes clear that these parties intended the court to accept the truth of the facts alleged in that [Rick Stumeier] confessed to entry of summary judgment. At the same court proceeding after summary judgment [Rick Stumeier] set the prove up on damages against the defaulted defendant Langford. At a then uncontested damages hearing they procured a judgment against Langford. [Rick Stumeier] then agreed not to proceed on collections against Langford in exchange for an assignment of Langford's indemnity agreement with Janis. [Rick Stumeier] succeeded in the first case and clearly benefitted by only proceeding against the defaulted party to an uncontested prove up and then receiving an assignment from that defendant.

The contract at issue between Janis and Langford provided that Janis mark property boundaries. The indemnity agreement allowed for indemnification from 'errors in location of said boundary lines.' The motion for summary judgment cited deposition transcripts that Janis did not mark any boundary lines. The motion for summary judgment was partially based on this fact. This motion was confessed by [Rick Stumeier] and judgment was entered for Janis. This is factually inconsistent with the position [Rick Stumeier] now takes."

Accordingly, the court granted Janis's motion to dismiss based on judicial estoppel. Rick Stumeier appeals.

¶ 13                                    II. ANALYSIS

¶ 14    Judicial estoppel is an equitable doctrine to be invoked by the trial court at its discretion. *Seymour v. Collins*, 2015 IL 118432, ¶ 36. The purpose of judicial estoppel is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment. *Id.* It is an extraordinary remedy and should be applied with caution. *Construction Systems, Inc. v. FagelHaber, LLC*, 2015 IL App (1st) 141700, ¶ 38. There is a two-step process that a court should use when determining whether to bar a claim under judicial estoppel. *Seymour*, 2015 IL

6

118432, ¶ 47. First, the trial court must determine whether the party to be estopped has: (1) taken two positions, (2) that are factually inconsistent, (3) in separate judicial or quasi-judicial administrative proceedings, (4) intending for the trier of fact to accept the truth of the facts alleged, and (5) have succeeded in the first proceeding and received some benefit from it. *Id.* Second, even if the court finds that all five requirements are present, it must exercise its discretion in deciding whether to apply judicial estoppel. *Id.* This exercise of discretion is mandatory because, even though all five prerequisites might be met, there may not be an intent to deceive or mislead as inadvertence or mistake may account for the positions taken and the facts asserted. *Id.* "Multiple factors may inform the court's decision, among them the significance or impact of the party's action in the first proceeding, and *** whether there was an intent to deceive or mislead, as opposed to the prior position having been the result of inadvertence or mistake." *Id.* The question of whether there was an intent to deceive or mislead is a "critical factor" in making this determination. *Id.* ¶ 54.

¶ 15    Generally, a ruling on a section 2-619 motion to dismiss is subject to *de novo* review. *Id.* ¶ 42. However, when a trial court exercises its discretion in applying judicial estoppel, we review its ruling for an abuse of that discretion. *Id.* ¶ 48. When a court is required to exercise its discretion, the failure to do so may itself constitute an abuse of discretion. *Id.* ¶ 50.

¶ 16    Here, the trial court found all five of the prerequisites were satisfied. The court found (1) that Rick Stumeier had taken two positions in that, in the previous case, he confessed that Langford, not Janis, was responsible for determining where the property

7

boundaries were and then, in the present case, argued that Janis was liable for any errors that Langford made in marking the property boundaries; (2) that these two positions were factually inconsistent; (3) that these factually inconsistent positions were taken in separate judicial proceedings; (4) that Rick Stumeier intended for the court to accept the truth of the facts alleged; and (5) that Rick Stumeier succeeded in the first proceeding by obtaining a default judgment against Langford in the amount of $324,953.70 and that he benefited by only proceeding against Langford, a defaulted party, in an uncontested prove up and then receiving the assignment from Langford.

¶ 17    However, there is nothing in the record to indicate that the trial court engaged in the second step of the judicial-estoppel analysis, *i.e.*, exercising its discretion in deciding whether to apply judicial estoppel.  In its written order, the court never mentioned the equitable factors, such as the intent to deceive, that are set forth in *Seymour*.  Based on this order, it is not clear whether the court understood that, even though all five prerequisites *may* have been met,[2] the application of judicial estoppel was not mandated and that it had discretion in invoking that doctrine.  Thus, we cannot say that the court exercised its discretion under step two of the *Seymour* analysis.  Accordingly, we vacate and remand so that the trial court may consider the equitable factors discussed in *Seymour*.  After considering those factors, the court should then decide whether, in its discretion, judicial estoppel applies.

---

[2]We want to make clear that we are not making a determination on the court's findings of fact with regard to the initial five prerequisites that were considered.

8

¶ 18                              III. CONCLUSION

¶ 19    For the reasons stated, we vacate the judgment of the circuit court of Effingham

County and remand for further proceedings.


¶ 20    Vacated and remanded.