# Illinois Official Reports

## Appellate Court

---

**Schindler v. Watson, 2017 IL App (2d) 160126**

---

| | |
|---|---|
| Appellate Court Caption | RALPH J. SCHINDLER, JR., Plaintiff-Appellant, v. NORMAN WATSON, PETER H. COZZI, ANNE V. COZZI, U.S. BANK, N.A., PERL MORTGAGE, INC., and UNKNOWN OWNERS AND OCCUPANTS, Defendants (Peter H. Cozzi, Anne V. Cozzi, and Perl Mortgage, Inc., Defendants-Appellees). |
| District & No. | Second District<br>Docket No. 2-16-0126 |
| Filed | March 16, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 15-CH-1817; the Hon. Bonnie M. Wheaton, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Ralph J. Schindler, Jr., of Chicago, appellant *pro se*.<br><br>Peter M. King, of King Holloway Lipinski LLC, of Glen Ellyn, for appellees. |
| Panel | JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.<br>Presiding Justice Hudson and Justice Jorgensen concurred in the judgment and opinion. |

**OPINION**

¶ 1   This case involves the expiration of a judgment lien on real estate. Defendant Norman Watson, the judgment debtor, sold the subject property to defendants Peter H. Cozzi and Anne V. Cozzi roughly two months before the lien was scheduled to expire. Plaintiff, Ralph J. Schindler, Jr., the judgment creditor, apparently unaware of the sale, did nothing to enforce his lien rights before the expiration date. Afterward, he filed a foreclosure complaint, which the trial court dismissed as untimely. He now contends that the sale operated to extend the expiration date and allow his foreclosure on the lien. He raises arguments similar to those that were rejected in *Barth v. Kantowski*, 409 Ill. App. 3d 420 (2011), a case decided by our Third District Appellate Court. Although we decline to follow *Barth*, we affirm the trial court's dismissal of plaintiff's untimely foreclosure complaint.

¶ 2                                    I. BACKGROUND

¶ 3   The following facts are derived from the pleadings, exhibits, and reports of proceedings.

¶ 4   On May 20, 2004, plaintiff obtained a judgment from the trial court against Watson in the amount of $164,303.20. The judgment related to a $100,000 credit line that plaintiff had extended to a limited liability company. Watson had personally guaranteed the indebtedness. On January 19, 2005, plaintiff filed a memorandum of judgment with the Du Page County recorder of deeds. Included was a certified copy of the judgment against Watson, along with the legal description and permanent real estate index number for property in Bartlett that was owned by Watson. This recording created a judgment lien on the subject property enforceable for seven years from May 20, 2004, the date of the judgment's entry. See 735 ILCS 5/12-101 (West 2004).

¶ 5   On March 25, 2011, approximately two months prior to the scheduled expiration of the judgment and the corresponding lien, Watson sold the subject property to the Cozzis. The Cozzis obtained mortgage loans on the subject property from defendants U.S. Bank, N.A., and Perl Mortgage, Inc. A copy of the warranty deed conveying the subject property to the Cozzis was filed with the Du Page County recorder of deeds on April 6, 2011. Plaintiff, who was not given any notice of the sale, made no timely attempt to revive his judgment or foreclose on his lien.

¶ 6   More than four years later, on October 26, 2015, plaintiff filed a "Verified Complaint for Foreclosure of Judgment Lien." Plaintiff alleged that he was due the principal amount of his lien, $164,303.20, plus $101,282.79 in accrued interest, for a total of $265,585.99. He requested that the trial court order the sale of the subject property and find that his judgment lien had priority over any potential mortgage lien claims of U.S. Bank and Perl Mortgage.

¶ 7   The Cozzis filed a motion to dismiss plaintiff's complaint, pursuant to section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2014)). The Cozzis argued that plaintiff's judgment lien had expired on May 20, 2011, and that plaintiff therefore lacked any interest in the subject property.[1] In a written response, plaintiff argued that his claim was "similar to a claim of financial injury." Plaintiff asserted that he was injured on

---

[1]Perl Mortgage joined the Cozzis' motion to dismiss. Perl Mortgage has also joined the Cozzis in filing an appellees' brief. Watson and U.S. Bank are not parties to this appeal.

March 25, 2011, when Watson sold the subject property to the Cozzis without satisfying his lien. Plaintiff argued that his "cause of action" therefore "arose" on March 25, 2011, and that he was "merely seek[ing] to assert his rights as they existed on that date."

¶ 8 During a hearing on the motion, the parties disputed whether this case was controlled by *Barth*. The trial court commented that this appeared to be a case of first impression, that the Cozzis were "rolling the dice" when they bought the property, and that the Cozzis were fortunate that plaintiff had not acted in a timely manner to enforce his lien. As in *Barth*, the trial court determined that plaintiff was precluded from foreclosing on the lien because it had expired. Accordingly, the trial court granted the Cozzis' motion to dismiss with prejudice. Plaintiff now brings this timely appeal.

¶ 9                                                    II. ANALYSIS

¶ 10 The facts in this case are simple. Application of the law becomes complicated. Defendants admit that the Cozzis were aware of the lien when they purchased the subject property. They acknowledge that the Cozzis knowingly risked having to defend against a possible lien foreclosure. They argue, however, that this risk was "short-lived," as plaintiff "never sought to enforce his lien rights before the expiration of the lien." We agree with defendants. For the reasons discussed herein, we believe that plaintiff's undoing was his inaction during the final year that his lien was enforceable against the subject property. We therefore affirm the trial court's dismissal of plaintiff's complaint.

¶ 11 A section 2-619 motion to dismiss admits the sufficiency of the complaint, but asserts an affirmative matter that defeats the claim. *Bjork v. O'Meara*, 2013 IL 114044, ¶ 21. The purpose of a section 2-619 motion is to "dispose of issues of law and easily proved issues of fact at the outset of litigation." *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003). We apply the *de novo* standard of review to a trial court's decision on a section 2-619 motion. *Simmons v. Campion*, 2013 IL App (3d) 120562, ¶ 21. We may affirm the court's decision on any basis supported by the record. *Id.* ¶ 22.

¶ 12 We begin with a brief discussion of the standards governing judgment liens in Illinois. At common law, a judgment did not create a lien against the real property of the judgment debtor. *Dunn v. Thompson*, 174 Ill. App. 3d 944, 947 (1988). A judgment lien is a creation of statute in derogation of the common law. *Wells Fargo Bank, NA v. Heritage Bank of Central Illinois*, 2013 IL App (3d) 110706, ¶ 26. Strict statutory compliance is therefore required of a judgment creditor who wishes to assert a lien against the debtor's real property. *Id.* ¶ 29.

¶ 13 Section 12-101 of the Code provides for the creation of liens on real estate by judgments. Pursuant to the statute, "a judgment *is a lien on the real estate of the person against whom it is entered* *** only from the time a transcript, certified copy or memorandum of the judgment is filed in the office of the recorder in the county in which the real estate is located." (Emphasis added.) 735 ILCS 5/12-101 (West 2004). The lien may be foreclosed in the same manner as a mortgage on real property. *Id.* Regarding the life span of a judgment lien, the statute provides as follows:

> "A judgment is not a lien on real estate for longer than 7 years from the time it is entered or revived, unless the judgment is revived within 7 years after its entry or last revival and a memorandum of judgment is filed before the expiration of the prior memorandum of judgment.

When a judgment is revived *it is a lien on the real estate of the person against whom it was entered* in any county in this State from the time a transcript, certified copy or memorandum of the order of revival is filed in the office of the recorder in the county in which the real estate is located." (Emphasis added.) *Id.*

¶ 14    Whereas section 12-101 of the Code governs the creation and life span of a judgment lien on real estate, section 12-108 of the Code provides that a judgment itself may continue to be enforced even where it is not revived within seven years. 735 ILCS 5/12-108 (West 2004). Section 12-108 states in pertinent part:

"Except as herein provided, no judgment shall be enforced after the expiration of 7 years from the time the same is rendered, except upon the revival of the same by a proceeding provided by Section 2-1601 of this Act; *but real estate, levied upon within the 7 years, may be sold to enforce the judgment at any time within one year after the expiration of the 7 years.*" (Emphasis added.) 735 ILCS 5/12-108(a) (West 2004).

¶ 15    We will return to the emphasized language from sections 12-101 and 12-108 later. For now, we must move on to section 2-1601 of the Code, which provides that "[a]ny relief which heretofore might have been obtained by scire facias may be had by employing a petition filed in the case in which the original judgment was entered in accordance with Section 2-1602." 735 ILCS 5/2-1601 (West 2004).[2] In turn, section 2-1602 of the Code provides that a judgment may be revived "by filing a petition to revive the judgment in the seventh year after its entry, or in the seventh year after its last revival, or in the twentieth year after its entry, or at any other time within 20 years after its entry if the judgment becomes dormant." 735 ILCS 5/2-1602(a) (West 2014). Finally, section 13-218 of the Code states that "[a] petition to revive a judgment, as provided by Section 2-1601 of this Code, may be filed no later than 20 years next after the date of entry of such judgment." 735 ILCS 5/13-218 (West 2014).

¶ 16    Applying these statutes to the instant case, we first note that plaintiff obtained his judgment against Watson on May 20, 2004. Plaintiff's lien on the subject property was created when he filed a memorandum of judgment with the recorder of deeds on January 19, 2005. See 735 ILCS 5/12-101 (West 2004). Thus, plaintiff possessed a valid judgment lien on the subject property from January 19, 2005, to May 20, 2011. Therefore, strictly construing section 12-101, the trial court was correct to find that plaintiff's lien expired on May 20, 2011. This was an appropriate basis on which to dismiss plaintiff's foreclosure complaint. See *Maniez v. Citibank, F.S.B.*, 404 Ill. App. 3d 941, 961 (2010). We note that plaintiff's judgment against Watson also expired on May 20, 2011. The option remains for plaintiff to revive his judgment against Watson until May 20, 2024, which would be 20 years from May 20, 2004, the date of the judgment's original entry. See 735 ILCS 5/2-1602, 13-218 (West 2004). Upon taking such action, plaintiff could then attempt to create a new judgment lien on any real estate owned by Watson.

___

[2]A *scire facias* proceeding is a common law action to revive a judgment; it is not a new proceeding, but a continuation of the suit in which the judgment was originally entered. *Revolution Portfolio, LLC v. Beale*, 332 Ill. App. 3d 595, 603 (2002). Black's Law Dictionary defines "*scire facias*" as "[a] writ requiring the person against whom it is issued to appear and show cause why some matter of record should not be enforced, annulled, or vacated, or why a dormant judgment against that person should not be revived." Black's Law Dictionary 1547 (10th ed. 2014).

¶ 17    Notwithstanding his continued ability to revive his judgment against Watson, plaintiff contends that the trial court retained the authority to enforce his judgment lien against the subject property as it existed on March 25, 2011, when Watson sold it to the Cozzis. Just as he argued in the trial court, plaintiff argues here that the sale of the subject property gave rise to a separate cause of action akin to a mortgage foreclosure. Plaintiff notes that a judgment lien may be foreclosed in the same manner as a mortgage on real property. 735 ILCS 5/12-101 (West 2004). He equates the payment period on a mortgage note to the enforcement period on a judgment lien. He points out that a mortgage foreclosure may be commenced within 10 years from the date of default. 735 ILCS 5/13-115 (West 2004). Thus, plaintiff argues, he should be permitted to treat the sale of the subject property much the same as a default on a mortgage note. Plaintiff accordingly asks this court to hold that Watson's sale of the subject property gave rise to a new cause of action, which he labels a "breach of lien," that carries a 10-year limitations period.

¶ 18    Plaintiff advances two general arguments in support of his underlying premise that the sale of the subject property gave rise to a separate cause of action. First, he argues that Watson's sale of the subject property was "unlawful." Without providing any legal authority, plaintiff argues that a judgment debtor should not be permitted to sell the subject property to a third party during the life of an enforceable judgment lien without notifying the judgment creditor and satisfying the lien. Plaintiff's second argument is that it would have been "fruitless" for him to attempt to revive his judgment lien or foreclose on it during the period between the sale of the subject property and the expiration of the judgment lien. As we will explain, plaintiff's second argument is supported by *Barth*. By arguing that the sale of the subject property gave rise to his cause of action, plaintiff builds on the notion that a judgment creditor must necessarily have some other way of enforcing his judgment lien when the subject property has been sold to a third party. We will address these arguments in turn.

¶ 19    First, we reject plaintiff's argument that Watson's sale of the subject property was "unlawful," as we find nothing in the statutes or the case law that would prohibit a judgment debtor from selling the subject property to a third party during the life of an enforceable judgment lien. *Cf. Bustard v. Morrison*, 2 Ill. 235, 236 (1834) (noting that the sale or transfer of land will not exempt it from operation of a lien at any time during the seven-year life of a judgment). Because the memorandum of judgment that creates the lien will identify the date of the judgment, anyone performing a title search will have notice of when the seven-year period of the judgment's enforceability is scheduled to expire. *Wells Fargo*, 2013 IL App (3d) 110706, ¶ 24. As the Cozzis did in this case, a potential buyer may risk purchasing the subject property despite the existence of an enforceable judgment lien. See *Maniez v. Citibank, F.S.B.*, 383 Ill. App. 3d 38, 43 (2008) ("the purpose of recording the memorandum of judgment is not just to alert the debtor that a judgment has been entered but prospective purchasers as well").

¶ 20    Likewise, we find nothing requiring that a judgment debtor notify the judgment creditor or satisfy the judgment lien before conveying the subject property to a third party. *Cf. Cochran v. Cutler*, 39 Ill. App. 3d 602, 609 (1976) (noting that the third party "took the [subject] property with constructive notice of both the original amount of the judgment and the remaining life of the lien" and concluding that, "[b]y failing to make arrangements for the satisfaction of the lien at the time of the conveyance, [the third party] took the risk that the [subject] property might increase in value and that such increase might be reached by the judgment creditors should they choose to enforce the lien"). Aside from arguing that it was "unlawful" for Watson to sell

- 5 -

the subject property without satisfying plaintiff's lien, plaintiff also argues that he should be allowed to proceed to discovery because "the title company may have insured over the Judgment lien or missed it entirely." But the law is clear that a title company owes no duty to the parties to discover a judgment lien. *United Community Bank v. Prairie State Bank & Trust*, 2012 IL App (4th) 110973, ¶ 68 ("The title search was not a service that [the title company] was providing to the parties; [the title company] did the title search for itself. The purpose of the title search was not to provide information to others regarding the title. Instead, the title search had only one purpose: to enable [the title company] to decide the exceptions to the coverage it was willing to offer.").

¶ 21    For these reasons, we hold that a judgment debtor under these circumstances may lawfully sell the subject property without notifying the judgment creditor or satisfying the judgment lien. The burden is on the judgment creditor to monitor his lien and take the appropriate steps for enforcement. Here, all that was required of plaintiff was the performance of a title search on the subject property at any point during the seventh year of the judgment, between May 20, 2010, and May 20, 2011. See 735 ILCS 5/2-1602(a) (West 2004) (providing that a judgment may be revived in the seventh year after its entry, or in the seventh year after its last revival).

¶ 22    As noted, a copy of the warranty deed conveying the subject property from Watson to the Cozzis was filed with the Du Page County recorder of deeds on April 6, 2011. This was the action that gave plaintiff constructive notice of the sale. See *Wells Fargo Bank, N.A. v. Simpson*, 2015 IL App (1st) 142925, ¶ 56. Thus, if plaintiff had performed a title search between May 20, 2010, and April 5, 2011, there would have been no record of the sale, which took place on March 25, 2011. That being the case, plaintiff could have extended the life of his judgment lien by filing a memorandum of a revived judgment. See *Guertler v. Barlow Woods, Inc.*, 230 Ill. App. 3d 933, 936 (1992) (noting that a revival of a judgment is a continuation of the judgment that allows a lienholder to maintain the status quo). This would have preserved the lien for enforcement against the subject property, regardless of the owner, for seven years from the date of the revived judgment.

¶ 23    The remainder of this opinion concerns plaintiff's ability to enforce his judgment lien between April 6, 2011, and May 20, 2011. Plaintiff argues that it would have been "fruitless" for him to attempt to revive his judgment lien *or foreclose on it* during this time. We disagree. For the following reasons, we hold that plaintiff could have preserved his judgment lien against the subject property—as it was held by the Cozzis—by filing a foreclosure complaint between April 6, 2011, and May 20, 2011. Our holding in this regard puts us at odds with *Barth*.

¶ 24    Like this case, *Barth* involved a judgment debtor's sale of the subject property during the final year of an enforceable judgment lien.[3] The plaintiffs in *Barth* obtained a judgment against Gregory Pytlewski on February 27, 2002. They filed a memorandum of the judgment that same day, citing Pytlewski's address as the subject property. Hence, the plaintiffs possessed a valid judgment lien on the subject property from February 27, 2002, to February 27, 2009. On July 11, 2008, Pytlewski sold the subject property to a third party, the Kantowskis. The plaintiffs then filed a complaint to foreclose on their lien on February 17, 2009. However, they made no attempt to revive the judgment or record a memorandum of

---

[3]Although we disagree with the conclusion in *Barth*, it remains that the judgment debtor in that case sold the subject property without satisfying the judgment lien. This is consistent with our conclusion here that Watson's conveyance to the Cozzis was lawful.

revival until *after* February 27, 2009. The Kantowskis in turn filed a section 2-619 motion to dismiss the foreclosure complaint, contending that the subject property was free of the lien as of February 27, 2009. *Barth*, 409 Ill. App. 3d at 421-22.

¶ 25        During a hearing on the Kantowskis' motion, the plaintiffs argued that they had preserved their judgment lien against the subject property by filing their foreclosure action within seven years of the date of judgment. The trial court asked whether the plaintiffs could provide any case law to support their position. After the plaintiffs were unable to do so, the trial court granted the Kantowskis' motion to dismiss. In a motion to reconsider, the plaintiffs argued that they had obtained an equitable lien against the subject property by filing their foreclosure action during the life of the lien. They also noted that they had revived the original judgment on May 21, 2009, and had recorded a memorandum of the revival on June 5, 2009. The plaintiffs argued that this revival should have related back to February 17, 2009, when they filed their foreclosure action. The trial court denied the plaintiffs' motion to reconsider and the plaintiffs appealed. *Id.* at 422-23.

¶ 26        In affirming the trial court's ruling, the Third District held as follows:

"In this case, the plaintiffs obtained the original judgment against Pytlewski on February 27, 2002, and filed a memorandum of the judgment that day. Thus, under section 12-101 of the Code, the lien attached to the subject property on February 27, 2002. On July 11, 2008, when the Kantowskis purchased the subject property, the lien existed. However, the record does not indicate that the plaintiffs took any action to revive the judgment, nor did they file a memorandum of an order of revival, prior to the expiration of the original lien on February 27, 2009, as required by section 12-101 to preserve the lien on the subject property. Thus, the plaintiffs did not strictly comply with section 12-101 and, as a result, their judgment lien on the subject property expired on February 27, 2009.

At the time the lien expired, Pytlewski, the judgment debtor, did not own the subject property; the Kantowskis owned it. Thus, since the subsequent May 2009 revival and June 2009 recording occurred after the original lien had lapsed, and since it constituted 'a lien on the real estate of the person against whom it [was] entered,' the plaintiffs were left to try to collect their judgment against property currently owned by Pytlewski, and not from the subject property as owned by the Kantowskis. [Citation.]

We therefore conclude that since the plaintiffs allowed the judgment lien against the subject property to lapse *and did not revive the judgment and make the requisite filing while the judgment debtor owned the property*, the plaintiffs' lien cannot be asserted against the Kantowskis and the subject property. [Citation.]

The plaintiffs nonetheless contend that they obtained an equitable lien on the property by filing the instant suit. However, they have not cited, and our research has not revealed, a case where a court has permitted the plaintiff to file a lawsuit in lieu of complying with the requirements of section 12-101 and then successfully assert the judgment lien against a subsequent owner of the property who was not the judgment debtor." (Emphasis added.) *Id.* at 424-25.

¶ 27        To illustrate the flaw in *Barth*, we return to the statutory language that we emphasized at the outset of our analysis. Section 12-101 of the Code provides: "a judgment *is a lien on the real estate of the person against whom it is entered* *** only from the time a transcript, certified copy or memorandum of the judgment is filed in the office of the recorder in the

- 7 -

county in which the real estate is located." (Emphasis added.) 735 ILCS 5/12-101 (West 2004). The same holds true when a judgment is revived: "[w]hen a judgment is revived *it is a lien on the real estate of the person against whom it was entered* *** from the time a transcript, certified copy or memorandum of the order of revival is filed." (Emphasis added.) *Id.* Strictly construed, the emphasized language provides that, for the purposes of creating or reviving a judgment lien on real estate, a judgment cannot be recorded with any legal effect against real estate not owned by the judgment debtor.

¶ 28    In *Barth*, the plaintiffs' original lien remained enforceable against the subject property until February 27, 2009, regardless of who held title. However, a revived judgment could not have operated to preserve the lien beyond that date—because the subject property was no longer the real estate of the person against whom the judgment was entered: Pytlewski. Thus, it would have been pointless for the plaintiffs to record a memorandum of a revived judgment once Pytlewski was no longer the record owner of the subject property. We believe that the *Barth* court was incorrect to the extent that it held otherwise. *Barth*, 409 Ill. App. 3d at 424.

¶ 29    However, our disagreement with *Barth* goes further. By concluding that the plaintiffs were unable to file a foreclosure action in lieu of complying with the section 12-101 revival requirements, the *Barth* court effectively held that a judgment creditor is powerless to enforce his judgment lien once the subject property is sold to a third party. This is the logical extension of the *Barth* court's holding that, "since the plaintiffs allowed the judgment lien against the subject property to lapse *and did not revive the judgment and make the requisite filing while the judgment debtor owned the property*, the plaintiffs' lien cannot be asserted against the Kantowskis and the subject property." (Emphasis added.) *Id.* at 425. In other words, after reprimanding the plaintiffs for failing to record a memorandum of a revived judgment between the sale of the subject property and the expiration of the lien, the *Barth* court went on to hold that the proper course of action for a judgment creditor under these circumstances is to record a memorandum of a revived judgment at some point *before* the subject property is sold to a third party. This contradiction aside, we believe that the outcome dictated by *Barth* is untenable.

¶ 30    To begin, where a judgment creditor seeks to preserve a judgment lien on real property, our research reveals nothing that would prohibit him from waiting until the final day of the seven-year period of the judgment's enforceability to record a memorandum of a revived judgment. See *First National Bank in Toledo v. Adkins*, 272 Ill. App. 3d 111, 116 (1995) ("There is nothing in the statute or case law requiring that a petition to revive a judgment be filed, or the judgment itself be revived, prior to expiration of the then existing seven-year period in which the judgment lien may still be enforced."). Moreover, the rule in *Barth* places an impractical burden on a judgment creditor seeking to enforce a judgment lien where the subject property has been sold to a third party. *Barth* requires that a judgment creditor somehow anticipate the sale of the subject property, then race to the courthouse and revive his judgment, then race to the recorder of deeds and record a memorandum of the revived judgment—all in an effort to preserve his lien before the sale is finalized. As plaintiff correctly observes, such a rule would encourage a judgment debtor to avoid the consequences of a judgment lien by selling the subject property near the end of the seventh year of the judgment's enforceability. That way, even if the judgment creditor is notified of the sale, he will not have enough time to initiate a foreclosure action and prevail on that action before the lien expires. But see *Cochran*, 39 Ill. App. 3d at 606 ("Once a judgment lien has been properly created and attached to the judgment debtor's interest in real property, the debtor may not impair or defeat

the lien by conveying the property to the third party, and the judgment creditor may subject the property to sale in satisfaction of his judgment in the manner provided in the statutes.").

¶ 31    In light of the foregoing, we believe that the plaintiffs in *Barth* preserved their right to enforce their judgment lien by filing a foreclosure complaint before the lien's expiration date. Accordingly, we conclude that plaintiff needed to do the same here if he wished to enforce his lien against the subject property after it was conveyed to the Cozzis. Our conclusion is supported by a case not cited in *Barth* or by the parties in this appeal.

¶ 32    In *First National Bank of Mt. Zion v. Fryman*, 236 Ill. App. 3d 754, 756 (1992), the plaintiff obtained a judgment against the defendant on February 24, 1984, and recorded a memorandum of the judgment on March 1, 1984. Thus, the judgment lien was enforceable against the subject property from March 1, 1984, to February 24, 1991. The plaintiff filed a complaint to foreclose on its judgment lien on November 13, 1990. *Id.* In a motion for summary judgment, the defendant argued that the judgment had lapsed because it was not "revived or executed and levied upon." *Id.* at 757. The trial court rejected this argument, agreeing with the plaintiff that "revival of the judgment was not required because the foreclosure proceeding was commenced by plaintiff within seven years of the rendition of the judgment." *Id.*

¶ 33    On appeal, the defendant challenged the trial court's ruling that the timely commencement of the foreclosure proceeding absolved the plaintiff of having to revive the judgment. *Id.* at 759. The appellate court noted that, under section 12-101 of the Code (Ill. Rev. Stat. 1989, ch. 110, ¶ 12-101), a judgment is not a lien against real estate for longer than seven years from the time it is entered or revived. *Id.* The court proceeded to discuss the import of section 12-108(a) of the Code (Ill. Rev. Stat. 1989, ch. 110, ¶ 12-108(a)), which contained language identical to the statutory language discussed *supra*. To wit:

> " '[N]o judgment shall be enforced after the expiration of 7 years from the time the same is rendered, except upon the revival of the same by a proceeding provided by Section 2-1601 of this Act; *but real estate, levied upon within the 7 years, may be sold to enforce the judgment at any time within one year after the expiration of the 7 years.*' " (Emphasis added.) *First National Bank of Mt. Zion*, 236 Ill. App. 3d at 759 (quoting Ill. Rev. Stat. 1989, ch. 110, ¶ 12-108(a)).

See also 735 ILCS 5/12-108 (West 2004). Applying the emphasized language, the court first held that "[a] complaint to foreclose a judgment lien is a levy on real estate in terms of section 12-108 of the Code." *First National Bank of Mt. Zion*, 236 Ill. App. 3d at 760. The court next held that "the filing of the complaint to foreclose the judgment lien" was therefore "sufficient to preserve the lien before the end of the seventh year." *Id.* Finally, the court noted that the plaintiff had complied with the requirement in section 12-108(a) that the property be sold within one year after the end of the seventh year of the judgment. *Id.*

¶ 34    We are aware that *First National Bank of Mt. Zion* is unlike this case and *Barth* from the standpoint that it did not involve the sale of the subject property to a third party. We find this to be a distinction without consequence. We believe that the rule set forth in *First National Bank of Mt. Zion* should also apply where the subject property has been sold to a third party. So long as the judgment creditor files a foreclosure action before the end of the seventh year of the judgment's enforceability, he preserves his lien against the subject property *regardless of who holds title*. Applying that rule to the instant case, and contrary to plaintiff's argument and the holding in *Barth*, it would not have been "fruitless" for plaintiff to attempt to foreclose on his

- 9 -

judgment lien against the subject property after Watson conveyed the property to the Cozzis. Rather, plaintiff could have preserved his judgment lien by filing a foreclosure action before May 20, 2011. This was the risk that the Cozzis acknowledge having taken—having to defend against a timely foreclosure action. Hence, the Cozzis' gamble paid off when plaintiff failed to act accordingly.

¶ 35 In sum, we reject plaintiff's contention that his cause of action arose when Watson sold the subject property to the Cozzis on March 25, 2011. Not only do plaintiff's arguments lack legal support, but accepting them would effectively reward plaintiff's lack of diligence during the seventh year of his judgment's enforceability. As we have explained, a judgment debtor may lawfully convey the subject property to a third party during the life of an enforceable judgment lien without notifying the judgment creditor and satisfying the lien. However, such a conveyance does nothing to impair the judgment creditor's lien rights. The judgment creditor must simply act during the seventh year of his judgment to preserve his judgment lien's enforceability against the subject property.

¶ 36 Here, plaintiff could have revived his judgment and recorded a memorandum of revival with the Du Page County recorder of deeds at any point between May 20, 2010, and April 5, 2011. This would have preserved the judgment against the subject property, regardless of the owner, for seven years from the date of the revived judgment. If, on the other hand, plaintiff waited to act until sometime between April 6, 2011, and May 20, 2011, a title search would have revealed that Watson no longer owned the subject property. Under these circumstances, plaintiff would have been left with one option: file a foreclosure action against the subject property before May 20, 2011. Under the strictly construed statutory language, plaintiff's inaction led to the expiration of his judgment and the corresponding judgment lien on May 20, 2011. See 735 ILCS 5/12-101, 12-108 (West 2004). The trial court was therefore correct to dismiss plaintiff's complaint with prejudice.

¶ 37         III. CONCLUSION

¶ 38 For the reasons stated, we affirm the trial court's dismissal of plaintiff's complaint

¶ 39 Affirmed.