# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Wells Fargo Bank, NA v. Heritage Bank of Central Illinois**, 2013 IL App (3d) 110706

---

| | |
|---|---|
| Appellate Court Caption | WELLS FARGO BANK, NA, Plaintiff-Appellee, v. HERITAGE BANK OF CENTRAL ILLINOIS, Defendant-Appellee (Black Hawk Investment Properties, Defendant-Appellant). |
| District & No. | Third District<br>Docket No. 3-11-0706 |
| Filed | February 26, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Although plaintiff's mortgage and a second mortgage were recorded after defendant recorded a memorandum of the judgment it obtained against the mortgagor, defendant lost its priority status for purposes of the distribution of the proceeds of the foreclosure sale of the property, since defendant allowed the judgment to lapse before seeking an order reviving the judgment; therefore, the trial court properly distributed the proceeds of the sale to the mortgagees. |
| Decision Under Review | Appeal from the Circuit Court of Tazewell County, No. 08-CH-508; the Hon. Paul Gilfillan, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

William P. Hardy, of Hinshaw & Culbertson LLP, of Springfield, and L. Lee Smith, of Hinshaw & Culbertson LLP, of Peoria, for appellant.

Louis R. Schroeder, of Fidelity National Law Group, of Chicago, and Colin Banyon, of Codilis & Associates, of Burr Ridge, for appellee Wells Fargo Bank, N.A.

Panel

JUSTICE SCHMIDT delivered the judgment of the court, with opinion.
Justice McDade concurred in the judgment and opinion.
Justice Lytton specially concurred, with opinion.

**OPINION**

¶ 1 Plaintiff, Wells Fargo Bank, N.A. (Wells Fargo), brought this foreclosure action seeking a judgment of foreclosure and sale of real property located at 1106 Audubon Drive, Pekin, Illinois. Defendants, Heritage Bank of Central Illinois (Heritage) and Black Hawk Investment Properties (Black Hawk), also claimed secured interests in the property. Ultimately, the property sold at auction for $150,001 and the circuit court of Tazewell County distributed the proceeds by awarding Wells Fargo $115,590.54 and Heritage $34,410.46. Black Hawk appeals, claiming the trial court erred in failing to grant Black Hawk priority status when disbursing the proceeds of the sale. We affirm.

¶ 2                          BACKGROUND

¶ 3 On June 6, 1994, Black Hawk obtained a judgment against Randi Friedrich in the amount of $512,414.05 in Rock Island County case No. 94-L-165. Black Hawk then recorded a memorandum of judgment in Tazewell County on June 21, 1994.

¶ 4 Wells Fargo holds a mortgage on the property at issue here located in Pekin, Illinois, which is owned by Randi Friedrich. The mortgage secures a note in the original amount of $153,750 and is dated February 18, 1998. Wells Fargo recorded the mortgage on February 23, 1998, in Tazewell County. On June 9, 1999, Heritage recorded a second mortgage on the property, which secured a $63,000 loan to Randi Friedrich.

¶ 5 On April 12, 2001, Black Hawk filed a petition to revive the judgment in case No. 94-L-165 with the Rock Island County circuit court. The court entered an order reviving the judgment on June 5, 2001. Black Hawk then recorded the revived judgment, via memorandum of judgment, in Tazewell County on June 15, 2001.

¶ 6 On May 27, 2008, Black Hawk again filed a petition in Rock Island County to revive the original judgment. The Rock Island County circuit court, again, entered an order reviving the

judgment, which Black Hawk then recorded in Tazewell County on May 28, 2008.

¶ 7     Wells Fargo filed this foreclosure action on December 18, 2008. It named Friedrich, Heritage and Black Hawk as defendants. Black Hawk moved for summary judgment, seeking an order declaring its lien on the property superior to all others. On July 2, 2010, the trial court entered an order prioritizing the liens against the property. The court found "there was no lien in favor of Black Hawk as to the instant Tazewell County real estate from June 5, 2001 until June 15, 2001; therefore, the prior liens (those existing before June 15, 2001) of plaintiff and Heritage Bank had priority."

¶ 8     Ultimately, on August 15, 2011, the Tazewell County sheriff sold the property at auction for $150,001. Thereafter, on August 29, 2011, the trial court entered an order approving and confirming the sale and ordering $115,590.54 of the proceeds to be distributed to Wells Fargo and $34,410.46 of the proceeds to be distributed to Heritage. Black Hawk appeals.

¶ 9                                          ANALYSIS

¶ 10    Before addressing the substance of Black Hawk's arguments, we must initially discuss our jurisdiction. Noting that Black Hawk's notice of appeal "does not mention the order entered on July 2, 2010 denying summary judgment on the issue of priorities as to Black Hawk," Wells Fargo questions our jurisdiction to review that order.

¶ 11    Generally, "[a] judgment of foreclosure is not final and appealable because it does not dispose of all the issues between the parties and it does not terminate the litigation." *JP Morgan Chase Bank v. Fankhauser*, 383 Ill. App. 3d 254, 260 (2008). "The order confirming the sale, however, does conclusively establish [rights] to the property and gives final approval to the proposed distribution of the sale proceeds." *Id.* "Accordingly, the order confirming the sale, rather than the judgment of foreclosure, is the final and appealable order in a foreclosure [action]." *Id.* Furthermore, interlocutory orders that constitute a procedural step in the progression leading to the entry of the final judgment from which an appeal has been taken become reviewable upon entry of the final and appealable order. *Knapp v. Bulun*, 392 Ill. App. 3d 1018, 1023 (2009).

¶ 12    We find the trial court's order of July 2, 2010, which prioritized the liens against the property sold at auction, constituted a procedural step in the progression leading to the entry of the final order dated August 29, 2011, approving the sale and distributing the proceeds therefrom. Therefore, even though the July 2, 2010, order is not specifically identified in defendant's notice of appeal, we hold that we have jurisdiction to review it.

¶ 13    Turning to the substance of Black Hawk's appeal, Black Hawk raises the single issue of whether the trial court erred when determining that its rights in the property were inferior to those of Wells Fargo and Heritage. The parties acknowledge that on the date Wells Fargo and Heritage recorded their mortgages, February 23, 1998, and June 9, 1999, respectively, Black Hawk had a valid and existing lien against the subject property that took priority over both mortgages. The parties seemingly further acknowledge that if the trial court correctly found that Black Hawk had no valid lien against the property for any period of time after Wells Fargo and Heritage recorded their mortgages, then Black Hawk lost its priority.

¶ 14    To determine whether, in fact, Black Hawk's lien lapsed, we must interpret section 12-

101 of the Code of Civil Procedure (the Code) (735 ILCS 5/12-101 (West 2010)). We review questions of statutory construction *de novo*. *Solon v. Midwest Medical Records Ass'n*, 236 Ill. 2d 433, 439 (2010). Our primary objective in interpreting a statute is to ascertain and give effect to the intent of the legislature. *Blum v. Koster*, 235 Ill. 2d 21 (2009). The most reliable indicator of such intent is the language of the statute itself, which is to be given its plain and ordinary meaning. *Id.* at 29. When the statutory language is clear and unambiguous, it must be applied as written without resort to extrinsic aids of statutory construction. *Id.* When a statute is ambiguous, "we may look beyond the Act's language to ascertain its meaning. [Citation.] To this end, a statute's legislative history and debates are '[v]aluable construction aids in interpreting an ambiguous statute.' " *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 397-98 (2003) (quoting *Advincula v. United Blood Services*, 176 Ill. 2d 1, 19 (1996)).

¶ 15    In 1994, at the time the Black Hawk obtained the original judgment (June 6, 1994) and recorded the original memorandum of judgment (June 21, 1994), section 12-101 read, in pertinent part, as follows:

"§ 12-101. Lien of judgment. ***

* * *

***[A] judgment, including judgments resulting from entry of orders requiring child support payments, is a lien on the real estate of the person against whom it is entered in any county in this State, including the county in which it is entered, only from the time a transcript, certified copy or memorandum of the judgment is filed in the office of the recorder in the county in which the real estate is located.

* * *

A judgment is not a lien on real estate for longer than 7 years from the time it is entered or revived.

When a judgment is revived it is a lien on the real estate of the person against whom it was entered in any county in this State from the time a transcript, certified copy or memorandum of the order of revival is filed in the office of the recorder in the county in which the real estate is located." 735 ILCS 5/12-101 (West 1994).

¶ 16    Black Hawk revived the original judgment in Rock Island County on June 5, 2001, and filed its memorandum of revived judgment in Tazewell County on June 15, 2001. Thereafter, our General Assembly amended section 12-101, pursuant to Public Act 92-817, effective August 21, 2002, to read, in pertinent part, as follows:

"Sec. 12-101. Lien of judgment. ***

* * *

*** [A] judgment is a lien on the real estate of the person against whom it is entered in any county in this State, including the county in which it is entered, only from the time a transcript, certified copy or memorandum of the judgment is filed in the office of the recorder in the county in which the real estate is located. ***

* * *

A judgment is not a lien on real estate for longer than 7 years from the time it is entered or revived, unless the judgment is revived within 7 years after its entry or last

-4-

revival and a memorandum of judgment is filed before the expiration of the prior memorandum of judgment.

When a judgment is revived it is a lien on the real estate of the person against whom it was entered in any county in this State from the time a transcript, certified copy or memorandum of the order of revival is filed in the office of the recorder in the county in which the real estate is located." Pub. Act 92-817 (eff. Aug. 21, 2002) (amending 735 ILCS 5/12-101 (West 2000)).

¶ 17 The trial court held that section 12-101 of the Code, which was "in existence in 2001," mandated a finding that "there was no lien in favor of Black Hawk as to the instant Tazewell County real estate from June 5, 2001 until June 15, 2001; therefore, the prior liens (those existing before June 15, 2001) of plaintiff and Heritage Bank had priority." The trial court went on to hold that, even had it applied the amended version of the statute, Black Hawk's lien would have lost its priority. While the parties quarrel over which version of section 12-101 should apply to this matter, we need not resolve that dispute as we find that the only reasonable reading of either version leads to the conclusion that Black Hawk's lien against the property in Tazewell County lapsed during June of 2001.[1]

¶ 18 Black Hawk disagrees, noting that it revived the original judgment (in Rock Island County on June 5, 2001) within seven years of the date it first obtained the judgment (June 6, 1994) and filed a memorandum of judgment for the revived judgment in Tazewell County (June 15, 2001) within seven years of filing the previous memorandum of judgment (June 21, 1994). Black Hawk argues these actions comply with the process set forth in either version of section 12-101 to ensure that its judgment lien remained in full force and effect against the property in Tazewell County from the day it filed its original memorandum of judgment. Specifically, Black Hawk claims that "the time for expiration of the memorandum of judgment must commence not from the date of the judgment or its revival, but from the filing of the memorandum." Black Hawk argues that any construction of section 12-101 that finds "the memorandum's expiration date commences instead from the entry of the judgment would render a portion of the language meaningless *** because the judgment lien could never last more than seven years from entry and by definition a memorandum of judgment cannot be executed until after the judgment is revived." Black Hawk does not identify the

---

[1]As an aside, we feel it worth noting that while deciding this case, a question arose as to whether a lapsed judgment *lien*, unlike a lapsed judgment, could ever be revived in light of the language in section 12-101(d) requiring that a memorandum of judgment be filed before the expiration of the prior memorandum of judgment. Happily, it is not a question we must address today as the only real issue before us is whether Black Hawk lost its lien on June 6, 2001. Whether that lien was ever revived is irrelevant to the resolution of this case. Therefore, when we speak of a "lapse" in the judgment lien, we do so because the parties seem to work under the assumption that an expired or lapsed judgment lien can still be revived. Maybe so. However, here it matters not whether the lien merely lapsed or whether the lien suffered a death and, unlike Lazarus, cannot be resurrected. Therefore, notwithstanding the "lapse" language used in this opinion, nothing herein should be construed as a holding by this court that an expired judgment *lien* can be revived. That question is beyond the scope of this opinion.

-5-

specific language that it claims would be rendered meaningless by an interpretation finding the lien expires seven years after the entry of the judgment itself. It appears Black Hawk is arguing such an interpretation would render the added language in the amended version meaningless.

¶ 19        Wells Fargo takes issues with Black Hawk's interpretation of the statute. Wells Fargo notes that at the time the original judgment was entered, section 12-101 plainly stated that a "judgment is not a lien on real estate for longer than 7 years from the time it is entered or revived." 735 ILCS 5/12-101 (West 1994). Therefore, Wells Fargo submits that the original Rock Island County judgment, entered June 6, 1994, was effective from June 6, 1994, through June 5, 2001. While Black Hawk recorded a memorandum of the original judgment on June 21, 1994, in Tazewell County, Wells Fargo argues that memorandum of judgment could not and did not extend the seven-year life span of the original judgment beyond June 5, 2001.

¶ 20        Wells Fargo continues, claiming that Black Hawk's interpretation of the statute cannot stand as such an interpretation would allow a creditor to "record a memorandum of judgment in the sixth year after entry of the judgment then have seven additional years from recordation to have the lien on the real estate." Wells Fargo notes this interpretation would allow a creditor to possess a valid lien on real estate 13 years after the entry of a judgment without ever reviving the judgment. Black Hawk fails, in its reply brief, to address this specific argument made by Wells Fargo. Black Hawk offers no explanation of how its interpretation of section 12-101 would prevent a creditor from having a valid lien against a property 13 years after the entry of a judgment, should one choose to wait to record a memorandum of judgment late in the sixth year following the entry of the original judgment.

¶ 21        We find Black Hawk's interpretation of section 12-101 untenable as it allows a judgment to live on as a lien against real property for more than seven years. Both versions of section 12-101 clearly state that a "judgment is not a lien on real estate for longer than 7 years from the time it is entered or revived." 735 ILCS 5/12-101 (West 1994); 735 ILCS 5/12-101 (West 2010). As Wells Fargo correctly notes, Black Hawk's insistence that the lien expires seven years after the recording of the memorandum of judgment would allow a judgment to be "a lien on real estate for longer than 7 years from the time it is entered." We are confident this was not the legislature's intention in enacting either the original or amended version of the statute.

¶ 22        Black Hawk's argument that our interpretation renders meaningless the language added in the amended version does not convince us that the legislature intended a memorandum of judgment to outlive the life of the judgment referenced. Again, Public Act 92-817, effective August 21, 2002, changed section 12-101 to read as follows:

        "A judgment is not a lien on real estate for longer than 7 years from the time it is entered or revived, unless the judgment is revived within 7 years after its entry or last revival and a memorandum of judgment is filed before the expiration of the prior memorandum of judgment." Pub. Act 92-817 (eff. Aug. 21, 2002) (amending 735 ILCS 5/12-101 (West 2000)).

¶ 23        Black Hawk's argument ignores the language of the statute, left unchanged by Public Act

92-817, which immediately follows the added language. Again, that paragraph notes that when "a judgment is revived it is a lien on the real estate of the person against whom it was entered in any county in this State *from the time* a transcript, certified copy or *memorandum of the order of revival is filed in the office of the recorder in the county in which the real estate is located*." (Emphases added.) 735 ILCS 5/12-101 (West 2002).

¶ 24        Black Hawk suggests that the reference to the "expiration of the prior *memorandum of judgment*" in the amended statute means that the memorandum of judgment has its own seven-year life. (Emphasis added.) As we explain, we conclude that the only reasonable interpretation is that the memorandum expires with the judgment. The memorandum of judgment identifies the date of judgment, allowing anyone doing a title search to know when the judgment expires. Under Black Hawk's analysis, one doing a title search and finding a memorandum of judgment less than seven years old and identifying a judgment more than seven years old (and therefore expired), would need to contact the court where the judgment had been entered to see whether it had been revived in order to determine whether the lien still existed on the property. We do not think this is what the legislature intended.

¶ 25        Black Hawk also points out that the underlying judgment never lapsed as it was revived within seven years. True. But, anyone doing a title search between June 6 and June 15, 2001, would have found a memorandum of judgment referring, on its face, to a judgment that expired on June 5, 2001. To hold, as Black Hawk requests, that this memorandum should protect the judgment lien is contrary to the plain language and the spirit of the recording statute. Such a construction could lead to all sorts of mischief and create confusion rather than clarity regarding the status of titles to real estate.

¶ 26        When applying section 12-101 to the case at bar, we are mindful that at common law a judgment did not create a lien against the real property of the judgment debtor. *Dunn v. Thompson*, 174 Ill. App. 3d 944 (1988). A judgment lien is a creation of statute in derogation of the common law. *Barth v. Kantowski*, 409 Ill. App. 3d 420 (2011). As this court noted in *Barth*, since "the creation and revival of a judgment lien are statutory in nature, courts require strict compliance with section 12-101." *Id.* at 424.

¶ 27        Strictly construing section 12-101, we conclude that Black Hawk had no lien against the Tazewell County property from (at least) June 6, 2001, through June 14, 2001. Black Hawk obtained the original judgment on June 6, 1994. That judgment could not serve as the basis for "a lien on real estate for longer than 7 years from the time it is entered." 735 ILCS 5/12-101 (West 1994). By filing the memorandum of judgment on June 21, 1994, in Tazewell County, Black Hawk possessed a valid lien against the property from June 21, 1994, through June 5, 2001. 735 ILCS 5/12-101 (West 1994) ("a judgment *** is a lien *** only from the time a *** memorandum of the judgment is filed in the office of the recorder in the county in which the real estate is located"); see also *Casey National Bank v. Roan*, 282 Ill. App. 3d 55, 60-61 (1996) ("A judgment becomes a lien on the real estate of the person against whom it is entered only from the time the judgment is filed in the office of the recorder of deeds in the county in which the real estate is located.").

¶ 28        Black Hawk obtained an order reviving the original judgment on June 5, 2001, in Rock Island County. The June 5, 2001, revival had no effect as to Black Hawk's lien against the

Tazewell County property until Black Hawk filed its memorandum of the order of revival. 735 ILCS 5/12-101 (West 1994); 735 ILCS 5/12-101 (West 2002) ("When a judgment is revived it is a lien on the real estate of the person against whom it was entered in any county in this State from the time a *** memorandum of the order of revival is filed in the office of the recorder in the county in which the real estate is located."). Black Hawk filed its memorandum of the order of revival on June 15, 2001.

¶ 29 In finding that Black Hawk's lien lapsed on June 6, 2001, we acknowledge Black Hawk's argument that neither Wells Fargo nor Heritage suffered any prejudice by the "momentary" expiration of Black Hawk's original lien. Both Wells Fargo and Heritage knew when they loaned money to Friedrich that the mortgaged property was subject to Black Hawk's judgment lien. Nevertheless, as noted above, section 12-101 is a statute in derogation of the common law, which requires strict compliance by a judgment creditor who wishes to assert a lien against a person's real property. *Barth v. Kantowski*, 409 Ill. App. 3d 420 (2011). Clearly, Black Hawk could have both revived its judgment and filed its memorandum of judgment within seven years of the original judgment. Black Hawk's failure to file a memorandum of the revived judgment before expiration of the lien created by the original judgment resulted in a lapse and, *ergo*, a loss of priority.

¶ 30                                         CONCLUSION

¶ 31 For the foregoing reasons, the judgment of the circuit court of Tazewell County is affirmed.

¶ 32 Affirmed.

¶ 33 JUSTICE LYTTON, specially concurring.

¶ 34 While I concur with the majority in its conclusion, I write to comment on the footnote to paragraph 17. The footnote discusses at length an issue that the majority admits was never raised by the parties, was not necessary to the decision in this case, and was never at issue in the trial court or the appellate court. It is not a proper function of this court to insert unripe issues not involving an actual controversy and unrelated to the specific factual situation. And yet, the majority has seen fit to raise the issue, and discuss it as if it were, in fact, before the court. As the footnote is irrelevant and, as I believe, an improper leap into an unnecessary and unwarranted discussion, I concur separately.