# Illinois Official Reports

## Appellate Court

---

### *Blewitt v. Urban*, 2020 IL App (3d) 180722

---

| | |
|---|---|
| Appellate Court Caption | JOSEPH L. BLEWITT, Plaintiff-Appellant and Cross-Appellee, v. LEONARD URBAN and CECILIA URBAN, Defendants-Appellees and Cross-Appellants. |
| District & No. | Third District No. 3-18-0722 |
| Filed | February 13, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 15-CH-1884; the Hon. John C. Anderson, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part. Cause remanded with directions. |
| Counsel on Appeal | Joseph L. Blewitt, of Crete, appellant *pro se*. <br><br> Alan R. Bruggeman, of Bruggeman, Hurst & Associates, P.C., of Mokena, for appellees. |
| Panel | JUSTICE WRIGHT delivered the judgment of the court, with opinion. Justices Carter and Holdridge concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff, Joseph L. Blewitt, filed a third amended petition to quiet title against defendants, Leonard and Cecilia Urban. The circuit court granted summary judgment in favor of Blewitt but denied Blewitt's subsequent motions for sanctions against the Urbans. Both parties appeal.

¶ 2                            I. BACKGROUND

¶ 3    This appeal requires a general understanding of several lawsuits initiated in Cook County, beginning in 1996. One of these prior lawsuits was finally resolved by an appeal to the First District.[1] The lawsuits are intertwined with the events that culminated in the present appeal from Will County case No. 15-CH-1884. Consequently, we briefly discuss, in chronological order, the events leading up to Will County case No. 15-CH-1884.

¶ 4                    A. Cook County Case No. 96-L-9639

¶ 5    On August 16, 1996, Joseph L. Blewitt filed a personal injury lawsuit in Cook County case No. 96-L-9639 on behalf of the Urbans. On September 25, 2000, the lawsuit was dismissed for want of prosecution. One year later, Blewitt refiled the Urbans' lawsuit. Shortly thereafter, however, the Urbans terminated Blewitt's legal representation.

¶ 6                    B. Cook County Case No. 03-L-2877

¶ 7    Two years after terminating Blewitt's legal representation, the Urbans filed a legal malpractice lawsuit, Cook County case No. 03-L-2877, against Blewitt for the legal services he provided in Cook County case No. 96-L-9639. On August 6, 2003, a default judgment was entered against Blewitt and "in favor of Leonard Urban *** as follows *** $238,007.61."

¶ 8    On March 29, 2004, the circuit court denied Blewitt's motion to vacate the default judgment. In its order, the circuit court stated: "The Court order of August 6, 2003 was considered by the Court at that time to adjudicate all claims, therefore the Order will be considered to include the non-injured spouse (Ms. Urban) *nunc pro tunc* to August 6, 2003."

¶ 9    Thereafter, Blewitt appealed the circuit court's March 29, 2004, order denying his motion to vacate the default judgment. While Blewitt's appeal was pending in the First District, the Urbans, on September 16, 2004, recorded a memorandum of judgment in the office of the Will County Recorder of Deeds. Importantly, the recorded memorandum of judgment stated that on August 6, 2003, a judgment was entered in the circuit court of Cook County, case No. 03-L-2877, in favor of Leonard and Cecilia Urban and against Joseph Blewitt in the amount of $238,007.61. The memorandum of judgment was signed by a judge and listed Blewitt's address.

¶ 10   On May 5, 2005, the First District, in *Urban v. Blewitt*, 356 Ill. App. 3d 1133 (2005) (table) (unpublished order under Illinois Supreme Court Rule 23), affirmed the circuit court's March 29, 2004, order denying Blewitt's motion to vacate the default judgment. However, relevant to our appeal, the First District's order stated:

---

[1] See *Urban v. Blewitt*, 356 Ill. App. 3d 1133 (2005) (table) (unpublished order under Illinois Supreme Court Rule 23). The First District's order is a part of the record on appeal but is not available on Westlaw.

"It is clear *** the March 29, 2004, order was not a proper *nunc pro tunc* order. There is no indication in the record that the August 6, 2003, default judgment did not accurately reflect the court's actual ruling at that time. [The Urbans] admitted as much in their motion to voluntarily nonsuit Cecilia Urban's claim, filed after the entry of the *nunc pro tunc* order, in which they alleged that 'on August 6, 2003, an order was entered in favor of Leonard Urban *** but no order was entered as to Cecelia [*sic*] Urban.' Also, the record contains no memorandum or other document contemporaneous with the default judgment. Instead, the order appears to have been based on the trial court's memory that it 'considered' the default judgment to encompass the claims of both plaintiffs."

¶ 11 The First District determined the circuit court's March 29, 2004, order denying Blewitt's motion to vacate the default judgment was valid because it was unnecessary for the circuit court to act *nunc pro tunc* to resolve Cecilia Urban's claim against Blewitt. The First District observed:

"[T]he [circuit] court retained jurisdiction to modify the *non-final default judgment* to address Cecilia Urban's claim. The August 6, 2003, default judgment did not dispose of Cecilia Urban's claim and was thus subject to modification at any time. The court disposed of this remaining claim, and terminated the litigation, with its March 29, 2004, order." (Emphasis added.)

¶ 12 Further, with respect to damages owed to Cecilia Urban in the malpractice lawsuit, the First District stated:

"Absent a transcript of the relevant proceedings, we must presume that the March 29, 2004, order adding Cecilia Urban to the [default] judgment without a specified damage award was a valid, intentional, decision by the court to award her no damages, either because no evidence concerning her claim had been presented or because such evidence was presented and the court found it to be insufficient."

¶ 13                    C. Will County Case No. 05-L-337

¶ 14 At some point in 2005, the Urbans enrolled the default judgment entered in Cook County case No. 03-L-2877 in Will County case No. 05-L-337. Thereafter, on February 28, 2006, the Urbans recorded a second memorandum of judgment in the office of the Will County Recorder of Deeds. This time, the memorandum of judgment stated that on August 6, 2003, judgment was entered in the circuit court of Will County, case No. 05-L-337, in favor of Leonard Urban and against Joseph Blewitt in the amount of $238,007.01. The memorandum of judgment was signed by a judge and listed an address for Blewitt.

¶ 15                    D. Will County Case No. 15-CH-1884 and
                Subsequent Rulings in Cook County Case No. 03-L-2877

¶ 16 On September 2, 2010, the Cook County circuit court revived the default judgment entered in case No. 03-L-2877.

¶ 17 On September 3, 2015, Blewitt filed a petition to quiet title in Will County case No. 15-CH-1884, which is the subject of this appeal. On May 19, 2016, Blewitt filed a first amended petition to quiet title.

¶ 18      On September 28, 2016, the Urbans recorded a copy of the September 2, 2010, revival order in the office of the Will County Recorder of Deeds. In response, on November 16, 2016, Blewitt filed a second amended petition to quiet title in Will County case No. 15-CH-1884, which contested the validity of the September 2, 2010, revival order entered in Cook County case No. 03-L-2877.

¶ 19      On January 11, 2017, the Cook County circuit court again revived the default judgment entered in case No. 03-L-2877. The Urbans recorded a copy of this revival order in the office of the Will County Recorder of Deeds on January 27, 2017.

¶ 20      On June 14, 2017, the Cook County circuit court in case No. 03-L-2877 granted Blewitt's motion to reconsider the January 11, 2017, revival order. The circuit court vacated the January 11, 2017, revival order because "it did misapply the law" and denied the Urbans' petition to revive the default judgment. In addition, the circuit court voided the September 2, 2010, revival order due to an improper service of Blewitt. Following these rulings, Blewitt, on July 3, 2017, filed a third amended petition to quiet title in Will County case No. 15-CH-1884.

¶ 21      On October 26, 2017, Blewitt filed a motion for summary judgment in Will County case No. 15-CH-1884 on the grounds that both the Urbans' September 16, 2004, and February 28, 2006, memoranda of judgment were invalid due to a lack of strict compliance with section 12-101 of the Code of Civil Procedure (Code) (735 ILCS 5/12-101 (West 2016)). Blewitt asserted the September 16, 2004, memorandum of judgment recorded by the Urbans was defective for incorrectly identifying Cecilia Urban as a recipient of the default judgment in the amount of $238,007.61 and stating the nonfinal judgment date of August 6, 2003.

¶ 22      Blewitt asserted the February 28, 2006, memorandum of judgment recorded by the Urbans was defective for stating the nonfinal judgment date of August 6, 2003, listing the amount of the default judgment as $238,007.01 instead of $238,007.61, including an incorrect judgment-entering court and case number, and lacking a signature of a judge.

¶ 23      Further, Blewitt argued summary judgment in his favor was required because the circuit court in Cook County case No. 03-L-2877 voided the September 2, 2010, revival order and vacated the January 11, 2017, revival order, rendering those recorded documents invalid under section 12-101 of the Code.

¶ 24      In Blewitt's view, the undisputed facts of record established that the documents recorded by the Urbans in the office of the Will County Recorder of Deeds were not valid and created a cloud on the title of his Will County real estate. As a result, Blewitt argued the Urbans never filed a correct memorandum of judgment for or revived the default judgment entered in Cook County case No. 03-L-2877, so as to create and maintain a lien of judgment under section 12-101.

¶ 25      On January 10, 2018, the circuit court in Will County case No. 15-CH-1884 conducted a hearing on Blewitt's motion for summary judgment and took the matter under advisement. On January 26, 2018, the circuit court entered a written order granting Blewitt's motion for summary judgment. The circuit court stated: "While the court sees little justice in today's ruling, the court is bound by the express & implicit holdings in *Maniez v. Citibank,* [*F.S.B.*], 383 Ill. App. 3d 38 (2008). Further direction from the Third District Appellate Court on these issues would be welcome." The Urbans filed a motion to reconsider, which was denied on April 17, 2018.

¶ 26                    E. Blewitt's Motions for Rule 137 Sanctions in
                                Will County Case No. 15-CH-1884

¶ 27        On May 16, 2018, Blewitt filed a motion for sanctions against the Urbans and their attorney in Will County case No. 15-CH-1884 under Rule 137. See Ill. S. Ct. R. 137 (eff. Jan. 1, 2018). On May 31, 2018, Blewitt's motion for sanctions was stricken by the circuit court for being noncompliant with local rules governing page limits. The circuit court granted Blewitt leave to refile his motion for sanctions, which Blewitt did on June 14, 2018. Blewitt requested sanctions for what he characterized as the Urbans' and their attorney's untrue statements and dilatory, harassing, and fraudulent behavior in Will County case No. 15-CH-1884.

¶ 28        The circuit court scheduled Blewitt's motion for sanctions for a hearing on August 13, 2018. However, on August 2, 2018, before the scheduled hearing and after receiving a response and a reply from the parties, the circuit court *sua sponte* denied Blewitt's motion for sanctions. In its order, the circuit court stated:

> "No one appears. Matter comes on [*sic*] Court's motion. This Court has reviewed all briefs submitted regarding sanctions and finds no sanctionable conduct occurred. This Court having reviewed the Motion for Sanctions, finds that: oral argument would not be helpful nor necessary. Motion for Sanctions is denied. The August 13, 2018, hearing is stricken."

¶ 29        On August 9, 2018, Blewitt sought to refile the May 16, 2018, motion for sanctions that was stricken for violating local rules governing page limits, apparently not realizing that his subsequent motion for sanctions had been *sua sponte* denied. Nevertheless, the circuit court granted Blewitt leave to refile the May 16, 2018, motion for sanctions. The circuit court again *sua sponte* denied Blewitt's motion for sanctions on August 20, 2018.

¶ 30        On August 30, 2018, Blewitt filed a motion to reconsider the denials of sanctions, which was denied on November 9, 2018. In its order, the circuit court recognized Blewitt's motion to reconsider was based upon his position that a Rule 137 motion is a pleading that cannot be *sua sponte* dismissed under section 2-615 of the Code (735 ILCS 5/2-615 (West 2018)). However, the circuit court disagreed its rulings were "tantamount to improper 2-615 dismissals made on the Court's motion."[2]

_____

[2]The circuit court found that, even if the motions for sanctions should have been treated as pleadings and were tantamount to a section 2-615 dismissal, it remained "on solid ground." The circuit court found, under the right circumstances, it could *sua sponte* dismiss a complaint. Blewitt did not meet the pleading rules and "the Court would not have been inclined to give him a third bite at the sanctions apple."

The circuit court also included a footnote observing that Blewitt was "simultaneously seeking Rule 137 sanctions against [the Urbans' counsel] and his clients in *Urban v. Blewitt*, Will County Case No[.] 05-L-337 (pending before Judge Petrungaro) for basically the same reasons as those advanced in his requests to this Court." Thus, the circuit court stated, "[t]reating the sanctions request as a conventional stand-alone pleading would also likely necessitate dismissal under 2-619(a)(3), but the Court need not reach that question." This footnote led Blewitt to file a motion for the vacatur of the circuit court's reconsideration order and the recusal of circuit court judge, John C. Anderson. Blewitt argued Judge Anderson was biased by an improper *ex parte* communication. However, Blewitt filed a notice of appeal before the circuit court could resolve this motion.

¶ 31    The circuit court explained its orders denying the motions for sanctions resulted from its consideration of "the merits because, even if every factual allegation *** were taken as true, the Court would still find that the conduct by [the Urbans] and their attorneys represented good-faith zealous advocacy, and not sanctionable conduct." The circuit court concluded by stating it was "intimately familiar with this case, its lengthy background, and the allegations of the Rule 137 motions, and the Court finds that no sanctionable conduct occurred."

¶ 32    On December 5, 2018, Blewitt timely appealed the denials of his motions for sanctions and reconsideration. On December 13, 2018, the Urbans timely cross-appealed the grant of Blewitt's motion for summary judgment and the denial of their motion for reconsideration.[3]

¶ 33                                    II. ANALYSIS

¶ 34    On appeal, Blewitt challenges the denial of his motions for sanctions. On cross-appeal, the Urbans challenge the grant of summary judgment in favor of Blewitt. In the analysis below, we address the merits of each order subject to this appeal in the same sequence they were ruled upon by the circuit court.

¶ 35                    A. The Urbans' Cross-Appeal—Summary Judgment

¶ 36    The history of the litigation surrounding the default judgment entered in Cook County case No. 03-L-2877 is both complicated and convoluted. In contrast, the issues in this appeal from Blewitt's lawsuit to quiet title, Will County case No. 15-CH-1884, involve a straightforward application of the law to the uncontested facts. We begin with the Urbans' cross-appeal challenging the circuit court's grant of summary judgment in favor of Blewitt.

¶ 37    Under section 2-1005 of the Code, summary judgment is warranted if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2016); see also *King v. NLSB*, 313 Ill. App. 3d 963, 965 (2000). However, summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt. *King*, 313 Ill. App. 3d at 965; accord *Seymour v. Collins*, 2015 IL 118432, ¶ 42. The circuit court has the duty to construe the record strictly against the movant and liberally in favor of the nonmovant. *Seymour*, 2015 IL 118432, ¶ 42. An appeal from the grant of summary judgment is subject to *de novo* review. *Id.* Hence, we review whether, as a matter of law, the circuit court correctly applied the uncontested facts of record to the controlling case law and section 12-101 of the Code, governing judgment liens on real estate.[4]

---

[3]Rule 303(a)(1) states "[a] judgment or order is not final and appealable while a Rule 137 claim remains pending unless the court enters a finding pursuant to Rule 304(a)." Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017).

[4]There appears to be disagreement between the parties regarding the scope of and basis for the circuit court's grant of Blewitt's motion for summary judgment. We find these disagreements to be irrelevant. For purposes of our *de novo* review, we review whether the uncontested facts of record support the circuit court's grant of summary judgment. If necessary, we may affirm the circuit court on any basis supported by the record. *Bocock v. McGuire*, 2017 IL App (3d) 150860, ¶ 11. We note, however, that at a hearing held on April 17, 2018, on the Urbans' motion to reconsider the grant of

¶ 38    At common law, judgments did not create liens against the real property of a judgment debtor. *Wells Fargo Bank, NA v. Heritage Bank of Central Illinois*, 2013 IL App (3d) 110706, ¶ 26. A judgment lien, as provided in section 12-101, is a statutory creation in derogation of the common law. *Id.* Thus, the case law overwhelmingly indicates that, "since 'the creation and revival of a judgment lien are statutory in nature, courts require strict compliance with section 12-101.' " *Id.* (quoting *Barth v. Kantowski*, 409 Ill. App. 3d 420, 424 (2011)); accord *Schindler v. Watson*, 2017 IL App (2d) 160126, ¶ 12; *Maniez v. Citibank, F.S.B.*, 383 Ill. App. 3d 38, 41 (2008); *Northwest Diversified, Inc. v. Desai*, 353 Ill. App. 3d 378, 387 (2004).

¶ 39    Section 12-101 provides for both the creation and lifespan of a judgment lien on real estate, stating:

> "[A] judgment is a lien on the real estate of the person against whom it is entered in any county in this State, including the county in which it is entered, only from the time a transcript, certified copy[,] or memorandum of the judgment is filed in the office of the recorder in the county in which the real estate is located. \*\*\*
>
> \* \* \*
>
> A judgment is not a lien on real estate for longer than 7 years from the time it is entered or revived, unless the judgment is revived within 7 years after its entry or last revival and a new memorandum of judgment is recorded prior to the judgment and its recorded memorandum of judgment becoming dormant.
>
> When a judgment is revived it is a lien on the real estate of the person against whom it was entered in any county in this State from the time a transcript, certified copy[,] or memorandum of the order of revival is filed in the office of the recorder in the county in which the real estate is located." 735 ILCS 5/12-101 (West 2016).

Section 12-101 also expressly states the term "memorandum," as used in that provision, means:

> "[A] memorandum or copy of the judgment signed by a judge or a copy attested by the clerk of the court entering it and showing the court in which entered, date, amount, number of the case in which it was entered, name of the party in whose favor and name and last known address of the party against whom entered. If the address of the party against whom the judgment was entered is not known, the memorandum or copy of judgment shall so state." *Id.*

¶ 40    Here, the circuit court found that the First District's decision in *Maniez* was outcome determinative. In *Maniez*, the First District acknowledged that, to create a judgment lien against real estate under section 12-101, there must be a properly recorded memorandum of judgment that is preceded by the existence of an enforceable judgment. *Maniez*, 383 Ill. App. 3d at 41. The judgment to be enforced must be final, valid, for a definite amount of money, and such that execution may issue thereon. *Id.* The First District recognized that "the filing of a memorandum of judgment with incorrect information did not satisfy the strict compliance standard the courts require in connection with section 12-101." *Id.* at 41-42 (discussing *Northwest Diversified, Inc.*, where "the memorandum of judgment contained an inaccurate judgment amount").

---

Blewitt's motion for summary judgment, the circuit court stated "I need a final order that grants summary judgment on all counts and grants the relief that you are seeking."

¶ 41    The plaintiff in *Maniez*, like the Urbans in this case, argued the memorandum of judgment required by section 12-101 is merely a notice document. *Id.* at 42. Thus, even though it was undisputed that the memorandum of judgment at issue in *Maniez* contained the wrong date of the judgment, the plaintiff argued this error did not invalidate the otherwise valid judgment since the mistake was merely a scrivener's error. *Id.* Further, the plaintiff, like the Urbans here, noted that the defendants in *Maniez* did not deny, but in fact knew, that a valid judgment was entered against them, notwithstanding the error in the memorandum of judgment. *Id.*

¶ 42    Ultimately, the First District in *Maniez* rejected the arguments made by the plaintiff in that case. *Id.* The First District found that the plaintiff's reliance on *First National Bank of Mt. Zion v. Fryman*, 236 Ill. App. 3d 754 (1992), was misplaced and actually supported the defendants' position. *Maniez*, 383 Ill. App. 3d at 42. Indeed, the First District in *Maniez* found that *Fryman* illustrated "the purpose of recording the memorandum of judgment [required by section 12-101] is not just to alert the debtor that a judgment has been entered *but [to alert] prospective purchasers as well*." (Emphasis added.) *Id.* at 43. Thus, the *Maniez* court found a memorandum of judgment "showing a judgment date of February 27, 1997, would not have sufficed to put a purchaser on notice that a judgment had been entered against the defendants on February 28, 1997." *Id.*

¶ 43    Relevantly, the First District in *Maniez* also considered and resolved a scrivener's error argument that is similar to the argument raised by the Urbans in this appeal. The First District stated, "[e]ven if we were to agree *** that the inclusion of the incorrect date in the memorandum of judgment was a scrivener's error, we must strictly adhere to the requirements of section 12-101." *Id.* at 44. "Since a valid judgment lien cannot be created without a valid judgment, the *** memorandum of judgment, referring to a nonexistent judgment, did not create a lien against defendants' real property." *Id.*

¶ 44    With these authorities in mind, we consider whether the Urbans' September 16, 2004, or February 28, 2006, memoranda of judgment strictly complied with section 12-101. Turning to the September 16, 2004, memorandum of judgment, we conclude the Urbans failed to strictly comply with section 12-101. This memorandum of judgment inaccurately stated that on August 6, 2003, a default judgment was entered in favor of both Leonard Urban and Cecilia Urban. In fact, no final default judgment was entered by the circuit court of Cook County in favor of Cecilia Urban on August 6, 2003. The circuit court in Cook County case No. 03-L-2877 subsequently attempted to add Cecelia Urban to the August 6, 2003, order, *nunc pro tunc*, but the First District on appeal found that the *nunc pro tunc* basis was improper. As determined by the First District in *Urban v. Blewitt*, 356 Ill. App. 3d 1133 (2005) (table) (unpublished order under Illinois Supreme Court Rule 23), March 29, 2004, rather than August 6, 2003, was the date the default judgment in favor of both Leonard and Cecilia Urban became final. Specifically, the First District stated:

"[T]he [circuit] court retained jurisdiction to modify the *non-final default judgment* to address Cecilia Urban's claim. The August 6, 2003, default judgment did not dispose of Cecilia Urban's claim and was thus subject to modification at any time. The court disposed of this remaining claim, and terminated the litigation, with its March 29, 2004, order." (Emphasis added.)

A memorandum of judgment including the date August 6, 2003, and Cecilia Urban as a party to the default judgment was defective, because it could not put prospective purchasers on notice

- 8 -

that, at that time, the default judgment was nonfinal and entered only in favor of Leonard Urban. See *Maniez*, 383 Ill. App. 3d at 43.

¶ 45    Similarly, after reviewing the February 28, 2006, memorandum of judgment, we also conclude the Urbans failed to strictly comply with section 12-101 because that memorandum of judgment incorrectly identified the amount of the default judgment as $238,007.01.[5] Even if we consider the error to be accurately described as a careless scrivener's error, as the Urbans suggest, we choose to follow the rationale from *Maniez* that we are nonetheless required to strictly adhere to the requirements of section 12-101. See *id.* at 44. An incorrect judgment amount, even one resulting from a "single keystroke" or scrivener's error of $0.60, is incompatible with section 12-101's strict compliance requirement and purpose of putting both debtors and prospective purchasers on notice of the default judgment. *Id.* at 43. We conclude the Urbans' February 28, 2006, memorandum of judgment failed to strictly comply with section 12-101.

¶ 46    Finally, we would be remiss if we did not recognize that the circuit court in Cook County case No. 03-L-2877 voided or vacated the Urbans' September 2, 2010, and January 11, 2017, revival orders. Hence, even if one of the Urbans' defective memoranda of judgment were valid to create a judgment lien on Blewitt's Will County real estate, the record on appeal indicates the Urbans failed to maintain that judgment lien by reviving the default judgment and recording a new memorandum of judgment "prior to the judgment and its recorded memorandum of judgment becoming dormant," as required by section 12-101. See 735 ILCS 5/12-101 (West 2016). Thus, the Urbans could not maintain a judgment lien on Blewitt's "real estate for longer than 7 years from the time" the default judgment was "entered or revived." See *id.*

¶ 47    In conclusion, we note that, in spite of Judge Anderson's sincere reservations, the circuit court fulfilled its duty to follow the clear path set forth by the relevant case law and the applicable statutory provisions. For the foregoing reasons, we conclude Blewitt was entitled to summary judgment as a matter of law due to the Urbans' failures to strictly comply with section 12-101 of the Code. See *id.*; see also *id.* § 2-1005(c); *King*, 313 Ill. App. 3d at 965.

---

[5]We acknowledge that the record indicates the Urbans enrolled the default judgment from Cook County case No. 03-L-2877 in Will County case No. 05-L-337. Section 12-106 of the Code provides:

"The person in whose favor any judgment is entered, may have the judgment enforced by the proper officer of any county, in this State, against the lands *** of the person against whom the judgment is entered *** when the same is authorized by law. Upon the filing in the office of the clerk of any circuit court in any county in this State of a transcript of a judgment entered in any other county of this State, *enforcement may be had thereon in that county, in like manner as in the county where originally entered*. (Emphasis added.) 735 ILCS 5/12-106 (West 2016).

Based upon this provision and what we know about the Urbans' enrollment of the default judgment in this case, the February 28, 2006, memorandum of judgment does not appear to be defective for listing the Will County circuit court and case No. 05-L-337, rather than Cook County and case No. 03-L-2877, as the court and case number where the default judgment was entered. See *id.*; see also *id.* § 12-101. However, due to the defect in the default judgment's amount, we need not further discuss this issue.

## B. Blewitt's Appeal—Sanctions

Next, we turn to Blewitt's appeal, wherein Blewitt asks this court to hold that the circuit court erred by *sua sponte* denying his motions for Rule 137(a) sanctions. Rule 137(a) provides:

> "Every pleading, motion and other document of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. *** The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other document; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. *** If a pleading, motion, or other document is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion or other document, including a reasonable attorney fee." Ill. S. Ct. R. 137(a) (eff. Jan. 1, 2018).

"Where a sanction is imposed under this rule, the judge shall set forth with specificity the reasons and basis of any sanction so imposed either in the judgment order itself or in a separate written order." Ill. S. Ct. R. 137(d) (eff. Jan. 1, 2018). An explanation is not required when the circuit court denies Rule 137(a) sanctions. See *Lake Environmental, Inc. v. Arnold*, 2015 IL 118110, ¶ 14.

Here, Judge Anderson presided over the proceedings for several years and was intimately familiar with the procedural record. Further, Judge Anderson originally scheduled, but later struck, a hearing on Blewitt's motion for sanctions. Based upon this unique record, we conclude Judge Anderson's initial instincts were correct and that an evidentiary hearing was necessary (1) to probe Blewitt's accusations that the Urbans and their attorney made untrue statements with the improper purpose of prolonging this litigation and (2) to provide a complete record for review. On this point, the Fifth District has noted:

> "A hearing is necessary for a trial court to determine if any untrue statement within a pleading was made without reasonable cause, unless the court's determination can be made on the basis of the pleadings or trial evidence. [Citation.] Although an evidentiary hearing should always be held when a sanction award is based upon a pleading filed for an improper purpose, a hearing is unnecessary if the sanction award is due to the unreasonable nature of the pleading based on an objective standard." *Hess v. Loyd*, 2012 IL App (5th) 090059, ¶ 26.

In sum, the record on appeal is insufficient to allow our court to determine whether there was an adequate basis for the circuit court's denials of sanctions. See *Lake Environmental*, 2015 IL 118110, ¶¶ 16, 19. Our supreme court has observed that, "[i]n the event the appellate court finds that the record is insufficient for such purposes [of determining the propriety of Illinois Supreme Court Rule 137 sanctions], then remanding the case may be appropriate. *Id.* ¶ 19. Therefore, pursuant to this observation by our supreme court we vacate the denials of Blewitt's motions for sanctions and find that remanding the matter to the circuit court is appropriate so the parties can participate in the previously scheduled sanctions hearing. See *id.* This will clarify the record and allow the protracted litigation to advance toward a close.

¶ 52        Further, due to the acrimonious tone of the parties in both the circuit court and on appeal, we unanimously conclude that, pursuant to our authority under Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994) and the interests of judicial economy, the matter should be assigned to another jurist on remand. This decision should not be interpreted, in any way, as an opinion from this panel on the merits, or lack thereof, of Blewitt's accusations against Judge Anderson. We hope that our measured approach will allow the final chapter in this litigation to come to an end.

¶ 53                                    III. CONCLUSION

¶ 54        The judgment of the circuit court of Will County is affirmed in part and vacated in part.

¶ 55        Affirmed in part and vacated in part.

¶ 56        Cause remanded with directions.